[No. D002396. Fourth Dist., Div. One. Mar. 19, 1986.]

PACIFICA HOMEOWNERS' ASSOCIATION, Plaintiff and Appellant, v. WESLEY PALMS RETIREMENT COMMUNITY et al., Defendants and Respondents.

1148

## Counsel

A. Lee Estep and Estep, Williams & Gordon for Plaintiff and Appellant.

Kadison, Pfaelzer, Woodard, Quinn & Rossi and Laurence J. Hutt for Defendants and Respondents.

## Opinion

**STANIFORTH, Acting P. J.**—Pacifica Homeowners' Association (Association) appeals the sustaining of a demurrer and the dismissal of its action seeking to enjoin the Wesley Palms Retirement Community and Pacific Homes, Inc. (collectively Wesley Palms) from allowing trees on its property to grow higher than its five-story building.

### Facts

The Association's members own single-family residences in a development, Pacifica Homes (Pacifica), located uphill from Wesley Palms on Mount Soledad in the City of San Diego (City). These residences have views of the ocean, Mission Bay and the city. Covenants contained in the homeowners' deeds protect these views from future obstruction.

Wesley Palms was granted a conditional use permit in 1958 to operate a retirement hotel on its 40-acre tract of land. In the findings of fact supporting issuance of the permit, the City, inter alia, stated: "That such use under the circumstances of the particular case will not be detrimental to health, safety or general welfare of persons residing or working in the vicinity, or injurious to property or improvements (existing or future) in the vicinity because a capable architect has designed attractive buildings and cottages which will be surrounded by a beautiful landscaped area. There will be no medical facilities on the property, which will not be a rest home, hospital, or sanitarium. The buildings will be set back from the exterior boundaries of the 40-acre tract and will constitute a harmonious, well-designed unit,

which will be far more attractive than even a high-class subdivision, or an uncoordinated development of individual houses. The installation of sewer and water lines will directly increase property values and health conditions; improve fire protection facilities; and make the immediate development of surrounding areas easier and less expensive." The City also attached conditions to the issuance of the permit, including: "That a landscaping plan be submitted and approved by the Planning Commission along with the final subdivision map with the entire landscaping plan to be completed within one year after the first building is occupied.

" . . . . . . . . . . . . . . . . . . . . . . .

"That construction shall be substantially as shown on the attached plan, except that the proposed 7-story building shall be reduced in height by two floors, with a proportional reduction in total height."

By 1984, eucalyptus and pine trees on the Wesley Palms property exceeded the height of its five-story building and were obstructing views in Pacifica. Attempts to resolve the problem broke down and the Association filed suit in February 1984, alleging Wesley Palms had interfered with an easement to light, air and an unobstructed view created by the conditional use permit in favor of the Association. The Association sought damages and injunctive relief. In July 1984, the Association amended the complaint. It sought injunctive relief, alleging the Wesley Palms property was burdened with a servitude in favor of the Association to not permit any obstruction exceeding the height of Wesley Palms' five-story building, had a duty under the conditional use permit to maintain its land so as not to be injurious to the Association's property and was creating a nuisance by allowing its trees to obstruct the Association's light and view.

Wesley Palms demurred. On September 7, 1984, the court sustained the demurrer without leave to amend. A judgment of dismissal was entered on October 3, 1984. The Association appeals, contending the conditional use permit was intended to give the Association's members a right to an unobstructed view and Wesley Palms has violated that condition.

### DISCUSSION

■ "The function of a demurrer is to test the sufficiency of a complaint as a matter of law." (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 611 [116 Cal.Rptr. 919].) ■ A demurrer admits the truth of all properly pleaded material allegations without regard to the difficulty of proof. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr.

88, 468 P.2d 216].) ■ "'[T]he allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.'" (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].)

■ A general demurrer may be sustained without leave to amend where it is probable from the nature of the defects in the previous unsuccessful attempts the plaintiff cannot state a cause of action. On appeal, the question is whether the trial court abused its discretion in denying leave to amend. (*Fugitt* v. *City of Placentia* (1977) 70 Cal.App.3d 868, 871 [139 Cal.Rptr. 123].) The burden of showing an abuse of discretion rests on the appellant. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

■ As a general rule, a landowner has no natural right to air, light or an unobstructed view and the law is reluctant to imply such a right. (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 127 [99 Cal.Rptr. 350]; *Taliaferro* v. *Sayler* (1958) 162 Cal.App.2d 685, 691 [328 P.2d 799]; 3 Miller & Starr, Current Law of Cal. Real Estate (1977) § 18:9, p. 262; 1 Ogden's Revised Cal. Real Property (1974) § 13.13, p. 548; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 360, p. 2056.) ■ Such a right may be created by private parties through the granting of an easement (see, e.g., *Petersen* v. *Friedman* (1958) 162 Cal.App.2d 245, 247 [328 P.2d 264]; Civ. Code, § 801, subd. 18) or through the adoption of conditions, covenants and restrictions (as is the case among the Pacifica homeowners) or by the Legislature (see, e.g., Civ. Code, §§ 801, subd. 18, 801.5; Pub. Resources Code, § 25980 et seq. [creating a right to sunlight for solar collectors]). Local governments may also protect views and provide for light and air through the adoption of height limits. (See, e.g., San Diego Mun. Code, § 101.0452 et seq.; *Taliaferro* v. *Sayler, supra,* 162 Cal.App.2d 685, 691.)

## II

Wesley Palms asserts that even if the permit contained a condition limiting the height of its trees, this condition could not be enforced by the Association.

■ The law allows a private individual to enjoin a zoning violation as a nuisance when the individual suffers a "special injury to himself in person or property of a character different in kind from that suffered by the general public" (*Venuto* v. *Owens-Corning Fiberglas Corp., supra,* 22 Cal.App.3d 116, 124, italics deleted) or an injury "greater than that suffered by the

public generally" (Cal. Zoning Practice (Cont.Ed.Bar 1969) § 11.6, pp. 479-480) or the individual is a "member of the community for whose particular welfare the ordinance was enacted" (*McIvor* v. *Mercer-Fraser Co.* (1946) 76 Cal.App.2d 247, 254 [172 P.2d 758]).

Here the Association alleges a specific conditional use permit contains a limitation on tree height and this limitation was imposed particularly for the benefit of the uphill landowners including the Association. Under these circumstances, the Association has met the standing requirements. It has sufficiently alleged it is a "member of the community for whose particular welfare the ordinance was enacted" (*McIvor* v. *Mercer-Fraser Co., supra,* 76 Cal.App.2d 247, 254) and it has suffered an injury different from or greater than that suffered by the general public. (Contrast *Taliaferro* v. *Sayler, supra,* 162 Cal.App.2d 685, where the plaintiff sought an injunction for a violation of a *general* height limit.[1])

■ Wesley Palms also contends the Association's failure to timely appeal the issuance of the conditional use permit or seek court review of the issuance of the permit bars the present action. This contention has no merit. The Association here is not challenging the validity of the permit or its conditions but seeking to enforce a condition which it alleges was attached to the permit. Any action based on a violation of this alleged condition would have been premature if prosecuted within the time frame (10 to 180 days after issuance) suggested by Wesley Palms.

### III

The Association asserts the conditional use permit restricted the height of Wesley Palms' trees to the height of its five-story building.[2] The Association

---

[1] In *Taliaferro*, the court held the adjoining landowner had no standing to seek damages for his neighbor's violation of a general height limit because the height limit granted him no easement for air and light and since he had no easement, he had no damages. But see *Hopkins* v. *MacCulloch* (1939) 35 Cal.App.2d 442 [95 P.2d 950], and *Smith* v. *Collison* (1931) 119 Cal.App. 180 [6 P.2d 277], where the courts found anyone residing in a residential zone could enjoin and seek damages from the owner of a nonpermitted commercial use. See also California Zoning Practice, *supra,* section 11.6, page 480, observing: "To show special injury, the above cases seem to require only proof that plaintiff's property decreased in value because of the violation. *Kappadahl* v. *Alcan Pac. Co.* (1963) 222 CA2d 626 . . ., although dealing with landowners seeking mandamus to compel revocation of a building permit allegedly issued in violation of the zoning ordinance, suggests that when a private person seeks to enforce a zoning ordinance a showing of special injury may no longer be required or that the court will presume the existence of special injury."

[2] The trees are uphill of the five-story building. The Association apparently wants the trees' height limited to the height of an imaginary horizontal line drawn from the top of the five-story building to the hillside, a height less than five stories at the hillside.

concedes the use permit does not expressly limit the height of the trees but argues such a limitation may be implied by reading together the City's finding Wesley Palms would not be "injurious to property and improvements (existing or future) in the vicinity" with the permit's conditions that Wesley Palms submit and obtain the planning commission's approval of a landscaping plan and that Wesley Palms' seven-story building be reduced by two floors. The Association contends since the City intended Wesley Palms be compatible with the surrounding community and since the City placed a five-story height limit on the building due to community concern, the City also intended to limit the height of the trees to the height of the five-story building.

First, we note the Association's reliance on the permit's language Wesley Palms would not be "injurious to property or improvements (existing or future) in the vicinity" is misplaced. This language is contained in a finding of fact, not a condition. Such a finding—the proposed use "will not adversely affect" the neighborhood—is required for the issuance of every conditional use permit. (San Diego Mun. Code, § 101.0506-C.1.) ■ Moreover, when read in context, the language does not imply a height limitation on trees in favor of the Association.

The planning commission found the Wesley Palms project would not be injurious "because a capable architect has designed attractive buildings and cottages which will be surrounded by a beautiful landscaped area." Thus, the focus is on the aesthetics of Wesley Palms, not on protecting the Association's views. The finding continues: "There will be no medical facilities on the property, which will not be a rest home, hospital, or sanitarium. The buildings will be set back from the exterior boundaries of the 40-acre tract and will constitute a harmonious, well-designed unit, which will be far more attractive than even a high-class subdivision, or an uncoordinated development of individual homes. The installation of sewer and water lines will directly increase property values and health conditions; improve fire protection facilities; and make the immediate development of surrounding areas easier and less expensive." This language is also directed at how Wesley Palms would fit into the community aesthetically and otherwise and how it would provide beneficial improvements. It is not directed at protecting the Association's views.

■ The Association also relies on the permit's requirement Wesley Palms obtain the planning commissioner's approval of a landscape plan to show the existence of the height limit. Presumably, Wesley Palms complied with this condition by submitting a landscape plan showing the eucalyptus

and pine trees and obtaining the commissioner's approval of this plan. The Association has made no allegations to the contrary.[3] Thus, it must be inferred the planning commission approved the mature height of the trees since it attached no trimming or other height restrictions and this would naturally be a place for imposing such a restriction.

■ Finally, the Association points to the permit's condition reducing the height of Wesley Palms' seven-story building to five stories as implying a similar reduction in the height of its trees. We disagree.

San Diego's Municipal Code in its definition of "Height (Building)" refers only to "a building or structure." (San Diego Mun. Code, § 101.0101.62.) In pertinent part, it provides: "As used herein, building or structure shall include such structural appurtenances as parapets; safety guardrails other than the type specified below; elevator shaft and stairwell enclosures not meeting the specified criteria below; chimneys, vents, stacks, or ducts exceeding twelve square feet in any one plane; other mechanical equipment and related screening; and similar features. Items not included as structural appurtenances nor in any determination of the height of a building or structure are television and radio reception antennae; flagstaffs; chimneys, vents, stacks, or ducts not exceeding twelve square feet in any one plane; open safety guardrails which are no higher than forty-two inches above a roofline, which contain vertical elements no greater than two inches square in cross section and no closer than four inches apart; and elevator shaft or stairwell enclosures above a building roofline and meeting the following criteria: . . ." (San Diego Mun. Code, § 101.0101.62.) Similarly, in the section, "Height Limitation Zones—Establishment of," it states in pertinent part: "In a height limitation zone, no *building or structure* shall be erected, constructed, altered, moved in or enlarged to a greater height than is permitted in said zone." (San Diego Mun. Code, § 101.0452, italics added.) The section goes on to detail how the height of a building is to be measured and repeats the definition of building height provided in section 101.0101.62.

These sections negate the Association's contention that included in a height restriction of a building is a corresponding height restriction of trees. This conclusion is strengthened by the fact the City has in other instances specifically imposed height restrictions on trees.

In Municipal Code section 101.0449 (Airport Instrument Approach Zone) the city had provided,[4] in pertinent part: "In an Airport Instrument Ap-

---

[3] In its brief on appeal, the Association states the trees were blocking views by 1966.

[4] This section and section 101.0450 were in effect at the time the conditional use permit was issued but were repealed in December 1985.

proach Zone, no structure, building, tower, smokestack, overhead transmission lines, *trees or any objects of natural growth,* shall be erected, constructed, altered, moved in, enlarged or allowed to grow in such a manner as to create an airport hazard which obstructs the aerial approach to an airport or is otherwise hazardous to its use for airplane landing or taking off.

"It is hereby declared that any building, structure, *tree or object of natural growth* which extends through or above a height limitation plane, as hereinafter defined, shall constitute an airport hazard and a public nuisance." (Italics added.) (See also San Diego Mun. Code, § 101.0450, Airplane Flight Training Zones.)

The City has also adopted sections addressing the height of "major landscaping at maturity" in the context of solar access and has required a "shadow plan" to be submitted in certain instances. (See, e.g., San Diego Mun. Code, §§ 101.1208, 103.0101-C.)

The fact the City has expressly addressed the height of trees in other contexts leads to the conclusion that if the City had intended a height limit on the trees in this instance, it would have so stated. Since it did not and since conditions on a conditional use permit must be expressly attached (see San Diego Mun. Code, § 101.0506-C-4), we conclude no such height limit was intended here.

The Association also contends it has a cause of action against the Wesley Palms because Wesley Palms in accepting the benefits of the permit, accepted a corresponding obligation to conduct its operation in good faith, i.e., to not cause unnecessary or unreasonable interference with the rights of surrounding property owners by allowing its trees to obstruct their views. However, as we noted before, a property owner has no natural right to an unobstructed view. In the absence of any agreement, statute or governmentally imposed conditions on development creating a right to an unobstructed view, it cannot be said Wesley Palms either acted in bad faith or interfered with any right. It did only what the law allows.

The judgment is affirmed.

Butler, J., and Lewis, J., concurred.