[No. B044686. Second Dist., Div. Seven. Aug. 15, 1990.]

TENANTS ASSOCIATION OF PARK SANTA ANITA, Plaintiff and Appellant, v.
BEVERLY SOUTHERS et al., Defendants and Respondents.

COUNSEL

Burlison & Luostari and Michael Fabrizio Fagiani for Plaintiff and Appellant.

Pollock & Keleher, James F. Keleher, O'Neill, Huxtable & Abelson and G. Steven Andersen for Defendants and Respondents.

OPINION

**WOODS (Fred), J.**—Plaintiff appeals from orders of dismissal following the trial court's sustaining of demurrers without leave to amend on the ground that plaintiff, an unincorporated association of residents in a mobile-home park owned and managed by defendants, lacked standing to sue. We reverse and conclude that plaintiff has standing to sue on some causes of action.

### FACTUAL AND PROCEDURAL SYNOPSIS

1. *Procedural Background*

On February 3, 1989, a first amended complaint was filed alleging causes of action for breach of statutory duties, unfair business practices, fraud and deceit, cancellation of written instrument, injunctions and abatement of a nuisance.

On June 30, 1989, the trial court sustained, without leave to amend, the demurrers of respondents Larry Burton, Beverly Southers and Beverly Investments. In July 1989, an order of dismissal was entered as to those respondents.

In August 1989, after the trial court sustained without leave to amend the demurrer of Monrovia Fifth Avenue Limited Partnership, an order of dismissal was entered as to this respondent.

Appellant filed a timely notice of appeal from both orders of dismissal.

## 2. *Introduction*

Appellant is an unincorporated association which filed suit on behalf of its members, most of whom were current tenants of Park Santa Anita (Park). The suit was filed against the owners and managers of the Park.

The action is based on the alleged misconduct of the owners in using fraud, intimidation, and other harassment techniques to attempt to force said members out and to close and sell the Park without providing them with adequate notice or following the procedures required by local and state law.

## 3. *Allegations of the Complaint*

Appellant is "an organization of all of the tenants at Park Santa Anita . . . . Although some of the tenants have moved from the subject property, [appellant] continues to exert and represent the rights and legal position of all of the tenants who are now, or have been, similarly situated." Appellant was formed for the purpose of pursuing the legal remedies of the tenants.

Respondents breached the statutory duties owed to the tenants pursuant to the Mobilehome Residency Law (Civ. Code, § 798 et seq.), Government Code section 65863.7, Health and Safety Code section 18200 et seq., and Business and Professions Code section 17200 et seq. Respondents did not file with the City of Monrovia, which had to approve the sale of the Park, the required impact report relating to the effect of the change of use on the tenants.

Damages of appellant's members included legal fees and costs incurred in seeking to enforce their legal rights before the city council of the City of Monrovia and not more than $500 each per willful violation of the statutes. Such fees are recoverable pursuant to Civil Code sections 798.85 and 798.86. The complaint sought compensatory and punitive damages as well

as monetary damages for personal injuries, including mental suffering, physical distress and anxiety.

As a result of respondents' fraudulent actions, certain tenants entered into agreements whereby they gave up their right to possess the subject property as well as entering into purchase agreements for the trailers on the subject property. The complaint sought to cancel the agreements and revoke or rescind the purchase of the trailers.

Appellant sought a temporary restraining order or an injunction ordering respondents to cease and desist from attempting to move the tenants from the Park in any manner which violated the Mobilehome Residency Law until the impact report had been ruled upon by the City of Monrovia.

Appellant sought to abate the public nuisance created by respondents' failure to maintain the Park's common areas and allowing nonresidents to use the common areas. These actions constituted a public nuisance pursuant to Civil Code section 798.87, subdivision (b).

## DISCUSSION

### 1. *Introduction*

█ "A demurrer admits the truth of all properly pleaded material allegations without regard to the difficulty of proof." (*Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1151 [224 Cal.Rptr. 380].) █ The allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (*Id.*, at p. 1152.)

In respondents' brief,[1] they point out that prior to the hearing on their demurrers, appellant filed another pleading, also denominated the first amended complaint, which added the names of the individual past and present tenants as plaintiffs in addition to appellant. Respondents state that their demurrers were in fact directed to this second first amended complaint, listing the individual tenants. Furthermore, respondents urge that we must uphold the court as we do not know on what grounds the court sustained the demurrers and must assume that substantial evidence supports the court's ruling.[2]

---

[1] Respondents Beverly Southers, Beverly Investments and Monrovia Fifth Avenue Partnership joined in the brief filed by respondent Larry Burton.

[2] We recognize that in the trial court, appellant argued that the pleading at issue was the second first amended complaint. However, we consider that respondents' raising the issue is in the nature of a red herring. Not only did appellant later seek leave of the court to amend its

On July 28, 1989, the trial court held a hearing on appellant's motion for leave to amend its complaint to add the individual members of the association as plaintiffs. At this hearing, in denying the motion, the judge stated that: "I told you before that you didn't have any standing, and that's my ruling, that the *Tenants' Association has no standing. So there are no plaintiffs in this action.* So how can the Tenants' Association, who has no standing as a corporation or any other legal entity, now come in and make a motion to amend?" (Italics added.)

This ruling makes it clear that the judge was ruling on demurrers to the first amended complaint filed on February 3, 1989, not the improperly filed second first amended complaint of April 13, 1989. The ruling also makes it clear that the basis for the court's finding was simply appellant's lack of standing, not any of the other grounds raised by respondents in their demurrers.

Accordingly, the narrow issue before us is whether or not appellant, an unincorporated association of present and past tenants at the Park, has standing to sue respondents who are the owners and managers of the Park.

 It was established by statute in 1967 that: "Any . . . unincorporated association, whether organized for profit or not, may sue and be sued in the name which it has assumed or by which it is known." (Code Civ. Proc.,[3] § 388, subd. (a).) Furthermore, it may act as a complainant in an action to enjoin a public nuisance or unfair competition. (9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 45, p. 554.)

 The complaint alleges that respondents used fraud, intimidation and other harassment techniques in an attempt to force tenants out of the Park so that the Park could be closed and sold without providing the tenants with adequate notice[4] or following the procedures required by local and state law. As a result, certain tenants gave up their right to their property and sold their mobilehome trailers.

In addition to causes of action for breach of statutory duties, unfair business practices, fraud and deceit, and cancellation of written instrument, the complaint also sought an injunction to prevent respondents from further illegal attempts to move tenants out of the Park. Finally, the complaint

---

complaint to add the individual members, but, in respondents' opposition to that motion, they admitted that the court previously had ruled that appellant lacked standing.

[3] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

[4] In its briefs, appellant discusses the failure of respondents to notify appellant of the sale. There is no such allegation in the complaint; the complaint alleges only that respondents did not notify the tenants of the sale.

sought to abate the nuisance created by respondents' failure to maintain the common areas of the Park.

The complaint alleged damages for legal fees and costs incurred, fines for statutory violations, compensatory and punitive damages, and monetary damages for personal injury, including mental suffering, physical distress and anxiety.

In their demurrers, respondents argued that appellant lacked standing to sue because it was not the real party in interest, sought no relief in its own name, and did not seek compensation for damages to common areas (see § 374).

## 2. *Standing to Sue in a Representative Capacity*

### a. *Public interest suits*

It is not altogether clear under what circumstances an unincorporated association has standing to sue in a representative capacity.[5] Courts have recognized the right of an unincorporated association to sue to challenge governmental action. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles, supra*, 34 Cal.App.3d 117.) █ It is well settled that one particular kind of unincorporated association—labor unions—has the right to sue in a representative capacity. (*Daniels* v. *Sanitarium Assn., Inc.* (1963) 59 Cal.2d 602, 603-608 [30 Cal.Rptr. 828, 381 P.2d 652].)

Back in 1973, one appellate court noted that: "In recent years there has been a marked accommodation of formerly strict procedural requirements of standing to sue [citation] and even of capacity to sue [citation] where matters relating to the 'social and economic realities of the present-day organization of society' [citation] are concerned." (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles, supra*, 34 Cal.App.3d 117, 122.)

In *Residents of Beverly Glen*, the court held that a homeowners association had standing to sue to challenge governmental action because its complaint alleged that its members lived in the affected area of the challenged project and would suffer injury if the project was allowed to proceed. (34 Cal.App.3d at p. 121.) The court looked to the *public nature* of the question

---

[5] We share the observation that: "It may also be true that while all class suits are representative in nature, all representative suits are not necessarily class actions. [Citations.] The question of this possible distinction has not been argued or briefed to us and we do not decide it." (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 129 [109 Cal.Rptr. 724].)

involved, noting that the right to sue is greatly relaxed where the question is of public interest. (*Id.*, at p. 127.)

Finally, the court noted that: "Whether or not a representative plaintiff does and can in fact adequately represent others is a question of fact for the trial court. And if the trial court decides that a named plaintiff cannot suitably represent the class, it should afford an opportunity for amendment." (34 Cal.App.3d at p. 129.)

The court concluded that summary judgment was improperly granted because residents had standing to seek redress for the injuries allegedly suffered by its members, and the defendants' declarations did not negate the alleged injuries. (34 Cal.App.3d at p. 128.)

Although the plaintiff in *Residents of Beverly Glen* was a corporation, courts have applied the same reasoning to plaintiffs which were unincorporated associations. In *Citizens Against Forced Annexation* v. *County of Santa Clara* (1984) 153 Cal.App.3d 89 [200 Cal.Rptr. 166], Citizens Against Forced Annexation (CAFA), an unincorporated association composed of taxpayers, residents, landowners and/or registered voters, filed an action challenging the validity of more than 125 annexations or proposed annexations. The court held that CAFA was an "interested person" under section 863[6] and, therefore, had standing to challenge the governmental action. (*Id.*, at p. 98.)

Noting that usually only those with a direct interest in ownership or title were properly involved in such actions, the court reasoned that: "CAFA has an indirect interest in the annexed territories through its members' direct interest in them. CAFA also has a direct organizational interest in the annexation procedures, and as a result, in the validity of particular annexations." (153 Cal.App.3d at p. 98.) The court had already determined that CAFA had a beneficial interest in annexation because it was not suing for damages, but rather was asserting a *public right*, the right to have public agencies comply with the annexation provisions of MORGA. (*Id.*, at p. 96.)

### b. Prospective relief suits

An appellate court held that an unincorporated association had standing to sue in a representative capacity to enforce a private, as opposed to a public, interest. In *San Diego etc. Boy Scouts of America* v. *City of Escondido* (1971) 14 Cal.App.3d 189 [92 Cal.Rptr. 186], a Boy Scout council

---

[6] Section 863 permits "any interested person" to bring an action to challenge certain decisions, including challenges to the validity of territorial annexations, made pursuant to the Municipal Organization Act of 1977 (MORGA) (former Gov. Code, § 35000 et seq.).

brought an action against a city to enforce a charitable trust, seeking a declaration that the city held title to property in trust for the benefit of local Boy Scouts and Girl Scouts. The court phrased the issue to be decided in terms that if the council had standing to sue to enforce a charitable trust, the proposed allegations of the complaint would be sufficient to permit it to sue in a representative capacity under section 382.[7] (*Id.*, at p. 195.)

Although the action was against a governmental body, *Boy Scouts* was not really a challenge to governmental action in the same sense as *Residents of Beverly Glen* or *Citizens Against Forced Annexation*. The real issue was the standing to bring a suit to enforce a charitable trust. The action just happened to be against a governmental body; there is nothing in the opinion to suggest that the court would not have found that the council had standing to sue in a representative capacity had the suit been against a private organization, such as one of the associations to which the property in question had originally been deeded or conveyed prior to its conveyance to the city. The court reasoned that since the city maintained that it had the right to use the property for a wider or broader purpose than to benefit the scouts, the court thought that the need of the boys and girls, who were the original beneficiaries of the trust, could best be met by those, i.e., the council, who were directly concerned with their interests and welfare. (14 Cal.App.3d at p. 196.)

In *McKeon* v. *Hastings College* (1986) 185 Cal.App.3d 877 [230 Cal.Rptr. 176], an action for declaratory and injunctive relief was brought seeking to compel defendant, who was acquiring property pursuant to an expansion program, the acquisition of which was causing the dislocation of residents of low income housing, to provide benefits under the Relocation Assistance Act (Gov. Code, § 7260 et seq.). One of the plaintiffs was the Coalition for Adequate Relocation (COFAR), an unincorporated association of individuals and agencies who either represented low income persons with housing problems or who were actively working on issues or procedures involving the availability of housing for low income people. (185 Cal.App.3d at p. 892.) The court determined that COFAR had standing to sue because "[t]he need for housing clearly qualifies as one of the most basic 'social and economic realities of the present-day organization of society' and has been recognized as such." (*Id.*, at p. 893.) The court thought that rather than pursuing a privately held grievance, COFAR was acting in the public interest. (*Ibid.*)

In *Twain Harte Homeowners Assn.* v. *Patterson* (1987) 193 Cal.App.3d 184 [239 Cal.Rptr. 316], a homeowners' association brought an action to

---

[7] Section 382 provides in relevant part that: "[W]hen the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

quiet title and to obtain declaratory relief with respect to a recreational easement granted by defendant property owners' predecessors in interest to the record title owners of property within a certain tract. The court determined that the association had standing to sue because the class was clearly defined—the association did not purport to represent anyone but its own membership, a group easily identified through discovery, and the community of interest among the members was obvious in that if an easement existed, it would inure to the benefit of each member as an alleged property owner in the tract. (*Id.*, at p. 187.)

### c. Suits for damages

It is settled that an unincorporated association can sue in a representative capacity when it has been injured itself (*Del Mar Beach Club Owners Assn.* v. *Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 907 [176 Cal.Rptr. 886, 25 A.L.R.4th 336]) or to bring an action for prospective relief such as an injunction or a declaration of rights. The instant case, however, sought not only prospective relief, but also damages for its individual members.

In *Salton City etc. Owners Assn.* v. *M. Penn Phillips Co.* (1977) 75 Cal.App.3d 184 [141 Cal.Rptr. 895], the court permitted a representative action by an unincorporated association of property owners. The complaint for damages or rescission and restitution of land sales contracts alleged that the defendants had used a fraudulent canned sales pitch designed to induce, which did in fact induce, its members to purchase defendants' property. The association had no contractual relations with the defendants nor had it been damaged by them. (*Id.*, at p. 186.)

The court looked to the essential nature of the action and found it to be a class action on behalf of a self-defined class. (75 Cal.App.3d at p. 188.) The court also noted that: "Only the extent of injury to each member would require individualized proof, a fact insufficient in itself to bar class treatment of the action." (Italics deleted.) (*Ibid.*) Pursuant to section 382, the court reasoned that: "The statutory authorization for representative or class suits is based on the doctrine of virtual representation and is an exception to the general rule of compulsory joinder of all interested parties. [Citation.] The doctrine of virtual representation rests on considerations of necessity and paramount convenience and was adopted to prevent a failure of justice. [Citation.] On whichever alternative of the statutory conditions the action is brought *two requirements must be satisfied; there must be an ascertainable class and a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.*" (Italics added.) (*Id.*, at p. 189.)

The court found that the class was readily ascertainable as it was self-defined—the members of the association—and that the commonality of interest was adequately set forth in the allegation of the use of the fraudulent canned sales pitch. (75 Cal.App.3d at pp. 189-190.)

While noting that the question whether the association fairly and adequately represented its members was to be determined by the trial court, the court observed that: "The presumption that one not a member of the represented class cannot adequately and fairly represent its interests cannot apply with full force to an association seeking to represent its membership; it imports an artificial distinction between the association and its members. One presumes that an association is typically the embodiment of a community of interest, the form assumed by some conglomerative principle or goal." (75 Cal.App.3d at pp. 190-191.)

In *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848 [223 Cal.Rptr. 846], two of the plaintiffs, who had sued for interference with the construction of a nuclear power plant, were political corporations. Making a somewhat confusing distinction, the court noted that cases which liberalized the standing rule for issues involving public interest sought declaratory or injunctive relief which would inure to the benefit of the members. (*Id.*, at pp. 863-864.) The court reasoned that: "By contrast, the [organizational] plaintiffs here seek *damages* for harm supposedly suffered by their members, but allege no assignment of the damage claims of their members or even that their members would in fact benefit from any award to the organizations. The organizations, which allege no monetary injury to themselves, are therefore not entitled to recover." (*Id.*, at p. 864.)

But then the court seems to suggest the possibility of a representative or class action under section 382 even though it ultimately concluded that the requirements of an ascertainable class and a well-defined community of interest in the questions of law and fact were not met there because the organizations were made up of wildly disparate organizations and individuals, including, but not limited to, taxpayers or ratepayers. (178 Cal.App.3d at p. 864.)

One court concluded that an association of townhouse owners had standing to sue the project developer in a representative capacity for damages to individual units. (*Raven's Cove Townhomes, Inc.* v. *Knuppe Development Co.* (1981) 114 Cal.App.3d 783 [171 Cal.Rptr. 334].) The court reasoned that the two requirements of an ascertainable class and a well-defined community of interest were met because the association had been formed for the purpose of providing maintenance, preservation and architectural control of the lots and common area and to promote the health, safety and welfare of

the residents and had filed the action on behalf of its members who all had a beneficial interest in the result. (*Id.*, at p. 795.)

 Much of the relief sought in this case was generally applicable to the tenants—the legal fees and statutory fines as well as the prospective relief (the requests for an injunction and abatement of the nuisance).

Accordingly, in this case, we conclude that considerations of necessity, convenience and justice provide justification for the use of the representative procedural device. There is an ascertainable class—members of the association who are the tenants and former tenants of the Park. There is also a community of interest in the questions of law and fact—not only was appellant formed to pursue the legal rights of its members, the members have a common interest in seeing that the applicable state and local mobile-home park laws are enforced; furthermore, the members were the victims of the alleged fraudulent actions of respondents.

However, some of the alleged injuries are too intangible and too inherently personal to the individual to reasonably constitute a community of interest. For example, what may have caused emotional distress to one tenant may not have caused emotional distress to another tenant, or may have caused a different degree of distress, as the second tenant may have been less susceptible to emotional distress or may have been treated differently than the first tenant.

Accordingly, we conclude that appellant does not have standing to sue for damages/injuries for anxiety, emotional distress, or personal injuries. The issue which arises is how to address a complaint which is brought in a representative capacity when the association has standing to sue on some, but not all, the causes of action. In this case, the solution is apparent. Leave should be granted to amend the complaint to add the individual past and present tenant members as plaintiffs for recovery of those categories of damages previously referred to as being intangible or inherently personal to the individual.

 When a "court concludes that the named plaintiffs can no longer suitably represent the class, it should at least afford plaintiffs the opportunity to amend their complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative." (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113].)

In *Cal. Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 850-851 [330 P.2d 778], the court permitted amendment of a complaint filed

by a corporation to include an individual member of the corporation as a party plaintiff to cure the original pleading which was defective because the corporation was not authorized to bring the action in a representative capacity. The court reasoned that a pleading may be amended, even after the cause was submitted, where the amendment stated no new causes of action against the defendant, did not state any new facts and defendants were not prejudiced thereby. (*Ibid.*) Since by allowing appellant to add its members appellant will not be stating new causes of action or new facts, there will be no prejudice to respondents.

## DISPOSITION

The order of dismissal is reversed, and the cause is remanded with directions to the superior court to vacate said order of dismissal and overrule the demurrers sustained on the basis of appellant's lack of standing to sue. Appellant shall be given leave to amend the complaint to add individual members of the association as plaintiffs to the already stated causes of action which seek to recover damages for intangible and inherently personal injuries of the individual members. If appellant chooses not to amend, then the allegations of anxiety, emotional distress and personal injuries shall be stricken from the complaint. Appellant to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.