Filed 8/29/24  Neighbors of Chase Knolls v. WK CK Sherman Oaks Venture CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NEIGHBORS OF CHASE KNOLLS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WK CK SHERMAN OAKS VENTURE, LLC, <br><br> Defendant and Respondent. | B331133 <br><br> (Los Angeles County Super. Ct. No.19STCV47002) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Affirmed.

Law Offices of Amanda Seward and Amanda Seward for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Craig J. Mariam, John P. Cogger for Defendant and Respondent.

# INTRODUCTION

Appellant Neighbors of Chase Knolls (NOCK) is an association representing certain current and former tenants of the Chase Knolls Garden Apartments (Chase Knolls).  NOCK and several individual plaintiffs sued the owner of Chase Knolls, WK CK Sherman Oaks Venture, LLC (WK CK) relating to issues caused by construction and major renovations on the property.  As trial approached, WK CK filed a motion in limine asserting that NOCK had standing only to seek damages for the association itself, and therefore it could not rely on evidence of tenants' individual experiences with noise, dust, and other construction-related disruptions.  In partial response, plaintiffs moved to amend the complaint to add 22 new plaintiffs, acknowledging that certain alleged damages were "too personal" to be asserted by NOCK.  The trial court partially granted the motion in limine, holding that NOCK could present evidence of damages to the association itself, but it could not rely on individuals' testimony about how construction affected them personally.  The trial court also denied plaintiffs' motion for leave to amend the complaint on the grounds that the motion was brought just as trial was set to begin.

Following plaintiffs' opening statement at trial, the court granted WK CK's oral motion for nonsuit.  The appellate record does not include the reporter's transcript for this day.  The court's written ruling stated that the motion was granted "on the grounds that Plaintiff's Opening statement put forth no facts or evidence in support of the claims of Plaintiffs [and] plaintiffs cannot show the necessary elements of their respective claims."  Only NOCK appealed.

NOCK asserts the trial court erred in its interpretation of associational standing and damages when granting the motion in limine and denying the motion for leave to amend the complaint. However, the appellate record and NOCK's briefing are insufficient to support any finding that the motion for nonsuit was improperly granted, and therefore we must assume the nonsuit ruling was correct. NOCK does not contend that the trial court's rulings on the motion in limine or motion for leave to amend the complaint would have changed the outcome of the nonsuit motion. As such, there is no basis for reversal and the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

WK CK owns Chase Knolls, formerly a 261-unit historical residential apartment complex in Sherman Oaks. At some point that is not clear in the record, WK CK began a significant renovation of the property: adding six three-story buildings containing 141 new units; adding a swimming pool and a gym; and upgrading the existing buildings and facilities, including their electrical wiring and plumbing.

In December 2019, a complaint was filed by NOCK and six individual former tenants of Chase Knolls.[1] The complaint alleged NOCK was "an unincorporated association" that brought "this action in a representational capacity on behalf of [its]

---

[1] A second association plaintiff, Chase Knolls Residents and Neighbors Association, was also included in the complaint, but it later dismissed its claims. A second defendant, Waterton 100 LBB Venture LLC, was also named in the complaint. This defendant apparently never appeared in the case and is not relevant to this appeal.

3

membership, tenants of Chase Knolls." The six individual plaintiffs were described as former tenants who "were forced to, and did, vacate the subject premises."

Plaintiffs alleged, "Tenants are living in a major construction zone with untenable noise, dirt, fumes and other major disturbances to their quiet enjoyment. In addition, Defendants have deferred, delayed and denied maintenance in the interim and reduced many services previously enjoyed by the membership of Plaintiff NOCK." Plaintiffs alleged that when tenants complained, management retaliated by "issu[ing] 3-day notices to quit without an opportunity to cure and threaten[ing] tenants with unlawful detainer actions." Plaintiffs alleged that conditions were so unbearable that the six individual plaintiffs and others moved out of Chase Knolls.

Plaintiffs alleged that during construction WK CK was required to comply with a "tenant habitability plan" (THP) filed with the Los Angeles Housing and Community Investment Department. They alleged that WK CK violated the THP in many ways. For example, while construction was underway, tenants' "apartments were uninhabitable, the floors, furniture, surfaces were covered with dust. Uncovered holes were left in the floors, in one instance leading to an outside crawlspace in a unit occupied by a family with a two and four-year old. Electrical and plumbing services were disrupted willy nilly, often with no notice to the tenants. Holes were left in the exterior walls for months." Construction noise extended beyond the hours approved in the THP. "Facilities for pets were not provided as promised in the THP." "Carport storage was removed for some tenants." "[T]enants were given 3-day notices to quit for the smallest of infractions, the rules and lease provisions were

4

applied in discriminatory ways, and tenants were treated with contempt, seemingly too often in ways designed to provoke or induce a violation of an apartment rule or demean the tenant."

Plaintiffs alleged 10 causes of action: Violation of Los Angeles Municipal Code section 152.07 relating to tenant habitability; breach of the covenant of quiet enjoyment; intentional infliction of mental distress; breach of the warranty of habitability; nuisance - private; nuisance - public; violation of Civil Code section 1942.4 (relating to the rental of dwellings that violate the Health and Safety Code); retaliation; constructive eviction (by the individual plaintiffs only); and unlawful business practices under Business and Professions Code section 17200, et seq. Plaintiffs prayed for damages, punitive damages, civil penalties, attorney fees, injunctive relief, disgorgement, interest, and costs.

WK CK demurred to the complaint. WK CK's memorandum of points and authorities for the demurrer is not in the record on appeal. In plaintiffs' opposition to the demurrer, they withdrew the cause of action under Civil Code section 1942.4.

According to the court's November 2020 order overruling the demurrer in part, WK CK asserted that NOCK lacked standing because the association members were not specifically named in the complaint. The court rejected this argument at the demurrer stage: "[WK CK] has not provided authority that the names of the specific tenants represented by the associational plaintiffs must be specifically named in order for the associational plaintiffs to . . . have standing to bring these causes of action. Nor has [WK CK] shown grounds that the associational

5

plaintiffs are not real parties in interest, as representatives of tenants of the subject property."

The court sustained WK CK's demurrer to the first cause of action for breach of Municipal Code section 152 et seq. and the sixth cause of action for public nuisance, with leave to amend. Plaintiffs did not file an amended complaint, and on January 15, 2021, WK CK filed an answer.

In October 2021, plaintiffs' counsel told WK CK's counsel in an email that three of the individual plaintiffs would be dismissed. She also wrote, "The other plaintiffs that are included in the tenant association are current tenants . . . . I will send you each tenant that is part of the association and there [*sic*] specific damages with the Monday batch of discovery responses." Plaintiffs' counsel provided a list of 23 members of NOCK, including three of the named individual plaintiffs.

## B. Pretrial motions

In January 2022, the case was assigned to a different judge. Trial was set for September 30, 2022.

On September 16, 2022, WK CK filed its trial brief and motions in limine. In its trial brief, WK CK asserted, "An unincorporated association lacks standing to sue for damages suffered by its members individually. [Citation.] As such, NOCK does not have standing to bring claims for individual damages on behalf of the individual members."

One of WK CK's motions in limine challenged "whether [NOCK,] an unincorporated association, can introduce evidence of individualized claims and damages which it cannot recover as a matter of law on behalf of its respective members in support of its causes of action for intentional infliction of emotional distress, breach of warranty [of] habitability, and private nuisance." WK

6

CK "anticipated that NOCK may argue or attempt to introduce evidence of alleged damages for its respective members' individualized emotional distress that were not only unspecified to Defendant during formal discovery, but also unrecoverable by NOCK in a representative capacity." WK CK therefore asked the court to "preclud[e] NOCK from offering any testimony or documentary evidence in support of any individualized claims on behalf of its members, including but not limited to claims for emotional distress and any allegedly resultant damages."

On September 21, 2022, plaintiffs filed a motion for leave to file a first amended complaint. The motion stated, "Defendant argues in its trial brief that the Plaintiff association lacks standing to bring claims for the individual damages on behalf of its individual members, citing as authority *Tenants Association of Park Santa Anita v. Beverly Southers* (1990) 222 Cal. App. 3d 1293, 272 Cal. Rptr. 361. Plaintiffs acknowledge the authority that some of the alleged injuries by the tenants of Chase Knolls may be too inherently personal to be recovered in a representative capacity, and therefore moves [*sic*] this court to amend the complaint to include the individual tenants on whose behalf the association filed this action, the suggested remedy of the court in *Tenants Association of Park Santa Anita, supra*, 222 Cal. App. 3d at 1304-1305." Plaintiffs also asserted, "Defendant had deposed approximately 25 tenants in discovery, all but one of the added individual plaintiffs. And aside from perhaps a short delay in the commencement of the trial date, there is no prejudice to the Defendant."

The proposed amended complaint attached to the motion had eight causes of action: the original ten, minus the two for

7

which the demurrer had been sustained.[2]  The proposed amended complaint named as plaintiffs NOCK and 26 individuals, including four of the original six individual plaintiffs.

WK CK opposed the motion for leave to amend the complaint.  WK CK noted that the hearing on the motion was one day before trial was set to begin, and argued, "Plaintiffs seek to add *twenty-three new* individual plaintiffs,[3] each of whom will assert a highly individualized claim and seek individualized damages."  WK CK noted that none of the new plaintiffs had been subjected to written discovery because they had not been parties, and "[i]t is self-evident that adding twenty-three plaintiffs on the day before trial is scheduled to start would necessarily result in prejudice to Defendant."  It also asserted that "Plaintiffs intentionally and affirmatively chose to proceed solely with NOCK as the named plaintiff instead of the members, and thereby actively shielded discovery aimed at NOCK's individual tenants/members, who Plaintiffs now seek to add to this action."  WK CK further argued that the new plaintiffs' claims were time-barred because they did not relate back to the original complaint, so amendment would be futile.

1.      *Ruling on motion for leave to amend the complaint*

At the hearing on the motion for leave to amend the complaint on September 29, 2022, the court noted that the motion did not have all the necessary elements required by the

---

[2]      Plaintiffs' counsel later said that the inclusion of the previously withdrawn cause of action under Civil Code section 1942.4 was a mistake.

[3]      There were 22 new plaintiffs named in the amended complaint, plus one original plaintiff who had previously dismissed her claims.

8

Rules of Court because it was missing an attorney declaration. The court said to plaintiff's counsel, "I know you're saying the reasons why you didn't do this earlier, but to me it's not a sufficient reason to be adding all of this. You're adding new issues. You're adding new people. It's changing the nature of the case and we're starting trial technically tomorrow."

Plaintiffs' counsel asserted that all of the proposed new plaintiffs had already been deposed, and defense counsel asked all questions that would have been asked in written discovery. Defense counsel disagreed that discovery for the proposed parties was complete. The court denied the motion for leave to amend. The court ordered the parties to attend a mandatory settlement conference and continued the trial to October 3. Trial was later continued again to November 18, 2022.

2. *Initial ruling on WK CK's motion in limine*

Plaintiffs filed a written opposition to WK CK's motion in limine on November 9, 2022. Plaintiffs stated, "It is acknowledged that an association may not recover damages for its members that are too intangible and too inherently personal to the individual, such as anxiety or emotion [*sic*] distress, but it is clear that a nonincorporated association can sue in a representative capacity to recover damages for other types of injuries to its members and can recover damages for injuries sustained by the association." Plaintiffs stated that NOCK sought "across-the-board" damages for all members, including rent reductions, payments for loss of storage units, relocation costs "for members who were forced to vacate their rent controlled units," and "damages for injury to the association by the retaliatory actions taken by the Defendant against its leadership and members as a result of their leadership and

9

membership in the association and for their advancement of the association's goals and objectives."

In its reply WK CK asserted, "NOCK is an unincorporated association, which *can* bring an action for the benefit of its members, but *cannot* seek damages on its members' behalf. [¶] As the individual members of NOCK . . . cannot recover damages as a matter of law, the exclusion of evidence regarding such will avoid the presentation of irrelevant and prejudicial evidence and streamline the trial proceedings."

At the hearing on the motion in limine on November 18, 2022, the court observed that representative actions typically involved issues involving "common areas or areas on the outside, roofs, exterior walls, stuff of that nature. Once you go inside, it's individual." The court stated that rent reduction due to a lack of quiet enjoyment seemed to be an individual issue based on how construction impacted certain units and individual tenants. Plaintiffs' counsel asserted that all NOCK members lived "along the corridor" of construction, and all were asking for a 50 percent rent reduction. Defense counsel noted that some tenants were closer to the construction than others, and plaintiffs were necessarily either asking for a rent reduction with no evidence about what effects the tenants actually suffered, or proposing to present evidence about their individual damages. The court granted the motion as to quiet enjoyment and relocation benefits, stating, "I can't say . . . as a matter of law that they all equally suffered the same."

When plaintiffs' counsel made a comment about whether NOCK "could be a representative of the group," the court responded, "You can be a representative of the group. That's a wholly different question from what are you allowed to recover as

10

a representative of the group.  They're not the same thing."  The court told plaintiffs' counsel that NOCK could present evidence of "damages to how [WK CK's actions] impacted your association's ability to function" and "how it affects the . . . the organization itself."  The court also told plaintiffs' counsel that leadership of NOCK "can testify about the impact [of construction] on the operations of the association."  The court therefore partially granted WK CK's motion in limine.

### 3.     *Subsequent ruling on WK CK's motion in limine*

The trial was continued again, and the court apparently requested further briefing on the issue of NOCK's entitlement to damages.  Plaintiffs asserted in a supplemental brief that NOCK sought "an across the board rent reduction for the period of construction for its members all of whose right to quiet enjoyment of the property was adversely impacted by the construction at Chase Knolls, relocation benefits in the amount of $22,950, per household member for members who were forced to vacate their rent controlled units because of the actions of the Defendant, reduction in rent of $200, per month, per member for the loss of storage units at Chase Knolls, and a prohibition against the 10% rent increase that Defendant seeks to impose on the members of Plaintiff NOCK. . . . NOCK further seeks damages for injury to the association by the retaliatory actions taken by the Defendant against its leadership and members as a result of their leadership and membership in the association and for their advancement of the association's goals and objectives."  Plaintiffs asserted, "California law permits the association to bring a representative action on behalf of its member tenants for the tangible damages sought, whether or not they are individualized."

11

WK CK apparently also filed a supplemental brief, but the record on appeal includes only the declaration accompanying the brief. In a joint witness list attached to the declaration, WK CK asserted that some of plaintiffs' witnesses violated the court's ruling on WK CK's motion in limine excluding evidence of individualized damages.

At a hearing on March 17, 2023, which was to be the first day of trial, the court noted that the parties had submitted supplemental briefing on WK CK's motion in limine, "which addresses the recoverable damages of [NOCK] as an organization." WK CK's counsel argued that there were only two individual plaintiffs with remaining claims, but plaintiffs proposed to have additional NOCK members testify about their individual experiences, and "those people can't testify on behalf of NOCK because NOCK has no damages." Plaintiffs' counsel disagreed, stating that NOCK itself did have damages, because NOCK's leadership was threatened with three-day notices to quit to discourage NOCK activity. WK CK's counsel noted that such damages to NOCK were neither alleged in the complaint nor revealed in discovery.

The court noted its earlier ruling that it would allow evidence of damages to NOCK that related to effects on the organization itself: "I was thinking of things such as you're going to have to go to another facility in order to hold your meetings. You're going to have to rent some space in order to do that. That is an organizational damage that is sustained by the organization. But if that hasn't been disclosed in discovery. And if actually that didn't happen, then there's nothing."

After some further discussion, the court stated, "I ultimately agree with the defendant on this. So that's going to be

my ruling." The court added, "This was not a complete association of all of the tenants of Chase Knolls. I don't even believe it's an association of all of the tenants along the construction corridor. [¶] So this is just a subset of people who did not like what was happening. . . ." The court asked how this ruling would affect the trial, and plaintiffs' counsel said, "I'm not sure. I've got to look and see what's left for the association. [¶] And if you're saying the association has no claim and can't represent its members for anything, I don't know what's left." The court continued the trial to April 28.

4. *Nonsuit*

WK CK states in its respondent's brief that in opening statements on May 3, 2023, plaintiffs' counsel made no reference to any claims of NOCK. WK CK then moved for nonsuit, which the trial court granted. The record on appeal does not include a reporter's transcript for this date. In a written order, the court granted the motion for nonsuit on the grounds that in plaintiffs' opening statements, NOCK and the two individual plaintiffs "put forth no facts or evidence in support of [their] claims . . . and those plaintiffs cannot show the necessary elements of their respective claims." The court entered judgment in favor of WK CK.

NOCK timely appealed.

## DISCUSSION

NOCK contends the trial court's orders granting WK CK's motion in limine and denying NOCK leave to amend the complaint "gutted [NOCK's] case." NOCK states in its opening brief that it is challenging the ruling on WK CK's motion in limine, the ruling on NOCK's motion for leave to amend the

13

complaint, and the court's grant of nonsuit. It did not file a reply brief.

Other than mentioning in a sentence fragment that it is challenging the nonsuit ruling, however, NOCK's brief does not discuss the motion for nonsuit. There is no summary of the nonsuit in the statement of facts, NOCK does not acknowledge the basis for the court's nonsuit ruling, NOCK offers no argument as to why the court erred in granting nonsuit, and the reporter's transcript does not include a transcript for the day the motion was made and granted. This record is not sufficient to challenge the nonsuit ruling.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) This principle is "'an ingredient of the constitutional doctrine of reversible error.'" (*Id*. at p. 609; see also Cal. Const., art. VI, § 13.) "'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Jameson v. Desta*, 5 Cal.5th at p. 609.)

NOCK has not met that burden here. The only information in the record regarding the motion for nonsuit is a written ruling by the court stating that it granted the motion because plaintiffs' opening statement "put forth no facts or evidence in support" of their claims. In the absence of any other information, we must presume this ruling is correct. (Code Civ. Proc., § 581c, subd. (a) [nonsuit may be granted after a plaintiff's opening statement];

*Carachure v. Scott* (2021) 70 Cal.App.5th 16, 25 [nonsuit after the plaintiff's opening statement is appropriate when the ""facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action""].)

In addition, NOCK has forfeited any contention that the nonsuit ruling was erroneous by failing to discuss the ruling in its brief. The California Rules of Court require an appellant's briefing to "[p]rovide a summary of the significant facts" (rule 8.204(a)(2)(C)) and "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority" (rule 8.204(a)(1)(B)). NOCK did not do so here; its opening brief is devoid of any discussion of the nonsuit motion. This failure forfeits the issue on appeal. "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. . . . We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

Moreover, NOCK has not argued that any of the trial court's rulings were prejudicial. Our state Constitution provides that "[n]o judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of procedure, unless . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "The phrase 'miscarriage of justice' has a settled meaning" in California law; it occurs only when the reviewing court, ""after an examination of the entire cause, including the evidence,""

15

determines "'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836; see also Code Civ. Proc., § 475 [an erroneous judgment or ruling may be reversed only when the record demonstrates that the error was prejudicial and "a different result would have been probable if such error, ruling, instruction, or defect had not occurred"]; Evid. Code, § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice"].) A reviewing court "cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.)

Here, NOCK does not make a prejudice argument. Regarding the motion in limine, NOCK has not asserted, for example, that the trial court's ruling prevented it from presenting evidence that would have supported its claims. Indeed, NOCK does not discuss how it intended to prove its case or describe the evidence the court excluded. Rather, NOCK argues only that the trial court wrongly decided the legal issue of associational

16

standing,[4] without explaining how the case would have been affected by a different ruling.

Regarding the motion for leave to amend, NOCK asserts that the court's denial of the motion for leave to amend "severely limited the recovery permitted by the individual members of the tenant association." However, NOCK offers no explanation of what those damages were, how recovery was limited, or how NOCK—the only appellant—was aggrieved by the court's refusal to add 22 new individual plaintiffs to the case. We cannot presume without support in the record that the trial court's rulings prejudiced NOCK. NOCK therefore has failed to demonstrate that the purported errors were prejudicial and reversible.

---

[4] Both parties failed to adequately brief the issue of associational standing and damages. NOCK relies on cases from 1981 and earlier; WK CK relies on cases from 1990 and earlier, while simultaneously failing to address the 1981 case discussed most extensively in NOCK's opening brief. The briefs do not include important later developments in associational standing jurisprudence. (See, e.g., *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1004 [associational standing depends, in part, on whether "the relief requested requires the participation of individual members in the lawsuit"]; *United Farmers Agents Assn., Inc. v. Farmers Group, Inc.* (2019) 32 Cal.App.5th 478, 489-491; *Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 672-673.) Because we affirm on other grounds, we did not request further briefing from the parties on this issue and do not address the substance of the trial court's ruling. However, we encourage counsel for both parties to be more thorough in the future.

# DISPOSITION

The judgment is affirmed.  WK CK is entitled to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS,  ACTING P. J.

We concur:

MORI, J.

ZUKIN, J.

18