Filed 9/9/20

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATHAN VOSBURG et al.,<br><br>    Plaintiffs and Respondents,<br><br>  v.<br><br>COUNTY OF FRESNO,<br><br>    Defendant;<br><br>DETAINEE-AMERICANS FOR CIVIC EQUALITY,<br><br>    Movant and Appellant. | F078081<br><br>(Super. Ct. No. 17CECG04294)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Law Office of Janice M. Bellucci and Janice M. Bellucci for Movant and Appellant.

Griswold, LaSalle, Dowd, Cobb & Gin, Mario U. Zamora and Jaskaran S. Gill for Plaintiffs and Respondents.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III. of the Discussion.

This appeal addresses an unincorporated association's eligibility for attorney fees under California's private attorney general statute, Code of Civil Procedure section 1021.5.[1]  The unincorporated association's members are patients who reside in a state mental hospital located within the City of Coalinga and are registered to vote.  The underlying litigation was an election contest brought by city council members alleging the patients were not eligible to vote and, without their votes, a measure to increase the local sales tax would have passed.

The unincorporated association filed a motion to intervene on the side of the defendants, the county and the county's registrar of voters.  The trial court deferred ruling on the motion to intervene and allowed the association to participate in the election contest.  The defendants and association argued the election results were valid because the patients resided in the city and were properly registered to vote.  After receiving evidence and briefing, the trial court rejected the election contest.  This result was favorable to the association and its members because it upheld the members' right to vote

The unincorporated association's subsequent motion for attorney fees was denied by the trial court on the ground the association did not qualify as a "party" for purposes of the "successful party" requirement in section 1021.5.  Specifically, the court found the unincorporated association was not a "de facto intervenor" and characterized its role in the election contest as an amicus curiae.

As the foundation for the application of section 1021.5 to this case, we conclude an unincorporated association has standing to appear in an election contest *as a representative* of its members if (1) its members live in the area affected by the outcome of the election, (2) its members would suffer injury from an adverse outcome in the election contest, and (3) the questions involved were of a public nature.  As explained below, the association met these requirements.

---

[1]     All unlabeled statutory references are to the Code of Civil Procedure.

For purposes of section 1021.5's "successful party" criterion, we conclude a "de facto intervenor" qualifies as a "party." (*People v. Investco Management & Development, LLC* (2018) 22 Cal.App.5th 443, 461 (*Investco*).) We further conclude the unincorporated association was a "de facto intervener" because it fully participated in the election contest by presenting evidence and legal arguments that were not duplicated by the other parties. The submission of evidence is an important factor that distinguishes interveners from amici curiae. Consequently, the association qualifies as a "party" for purposes of section 1021.5. In addition, the outcome of the election contest and the association's contribution to that outcome establishes as a matter of law that the association was "successful" for purposes of section 1021.5. Accordingly, we remand to the trial court to determine whether the association satisfied the other statutory criteria for attorney's fees.

We therefore reverse the order denying the motion for attorney fees.

## FACTS

California State Hospital—Coalinga (CSH-Coalinga) is overseen by the California Department of State Hospitals. It is a self-contained, 1,300-bed, psychiatric hospital constructed with a security perimeter. The patients at CSH-Coalinga are committed involuntarily by court order because they have been classified as (1) mentally disordered sex offenders (former Welf. & Inst. Code, § 6316); (2) sexually violent predators (Welf. & Inst. Code, §§ 6602, 6604); (3) not guilty of a crime by reason of insanity (Pen. Code, § 1026); (4) mentally disordered offenders (Pen. Code, §§ 2962, 2972); or (5) mentally ill prisoners transferred from the prison system (Pen. Code, § 2684). Thus, among other things, CSH-Coalinga provides psychiatric treatment for sexual offenders who have completed their prison sentences and have been involuntarily committed for extended treatment. CSH-Coalinga does not accept voluntary admissions.

CSH-Coalinga has been located within the City of Coalinga since it was annexed in 2006. The patients at CSH-Coalinga retain the right to vote, unless otherwise ordered

3.

by a court. As a result, a patient may complete a voter registration application and submit it to the registrar of voters of the County of Fresno (County). The registration application requires the patient to state his or her address for voting purposes and requires each voter to sign the application under penalty of perjury.

At the time of the November 2017 election, 322 patients at CSH-Coalinga were registered to vote in the City of Coalinga. The number of registered voters is known because CSH-Coalinga constitutes its own precinct, which was designated "0001001" for purposes of the November 2017 election.

One of the items presented to voters of the City of Coalinga at the November 2017 election was a ballot measure proposing to raise the total sales tax rate in the city from 7.975 percent to 8.975 percent. The sales tax measure was referred to as Measure C. County and its registrar of voters were responsible for conducting the November 7, 2017 election in the City of Coalinga and canvassing the results.

Of the 1,127 votes cast in the election, 582 voters opposed Measure C and 545 voted in favor of it. As a result, Measure C was defeated. In the CSH-Coalinga precinct, 178 ballots were completed. These ballots contained 127 votes opposing Measure C and 50 votes in support of Measure C; one ballot was left blank. As a result, if the votes cast by patients at CSH-Coalinga were subtracted from the election results, Measure C would have passed by a vote of 495 to 455.

Appellant Detainee-Americans for Civic Equality (DACE) is an unincorporated association. It was formed in 2010 to encourage political participation by CSH-Coalinga patients, to help them to register to vote, and to advocate for issues of concern to the patients. Prior to the November 2017 election, DACE organized meetings and discussions among CSH-Coalinga patients about the merits of Measure C. A member of DACE who is a former CSH-Coalinga patient communicated with the City of Coalinga about Measure C and sought the city's cooperation in increasing transportation services for visitors to and from CSH-Coalinga. DACE asserts city officials disregarded its

4.

concerns and, as a result, DACE ultimately recommended that patients vote against Measure C.

After Measure C was defeated, DACE contends CSH-Coalinga patients were targeted, blamed and scapegoated for the defeat in numerous ways. DACE also contends city officials began to advocate for the disenfranchisement of CSH-Coalinga patients. Other forms of retaliation against CSH-Coalinga patients became the subject of a federal lawsuit. (See *Saint-Martin v. Price* (E.D.Cal. June 6, 2018, No. 18-CV-00123-DAD-SKO) 2018 U.S. Dist. LEXIS 95389, 2018 WL 2716907 [defendants' motion to dismiss patients' complaint denied].)

## PROCEEDINGS

In December 2017, Nathan Vosburg, Steve Raine, Ron Ramsey, Ron Lander, and Tanya Stolz, in their personal and official capacities as councilmembers for the City of Coalinga (Contestants), filed a statement of contest pursuant to Elections Code sections 16100, subdivision (d) and 16400. The pleading named the County of Fresno (County) and its registrar of voters, Brandi L. Orth, as defendants. Contestants filed the statement to challenge the November 2017 elections results on Measure C. Contestants asserted (1) voters must be domiciled in the City of Coalinga to vote on a measure proposed by its council, (2) residents detained in CSH-Coalinga are domiciled in their prior county of residence, (3) votes cast on Measure C by residents of CSH-Coalinga were illegal, and (4) the result of the election should be retabulated to exclude the votes illegally cast. Contestants alleged that if the illegal votes were deducted from the votes cast, Measure C would have passed.

On January 16, 2018,[2] County filed an answer to the statement of contest. County specifically denied the allegations that (1) several illegal votes were cast in the November

---

**2** All further references to dates are to the year 2018 unless noted otherwise.

7, 2017 election and (2) the residents of CSH-Coalinga are domiciled in their prior county of residence.

*Motion to Intervene*

A week later, DACE filed a motion to intervene in the election contest, which was set for hearing on March 7. The motion stated DACE sought to unite with County in resisting the election contest filed by Contestants. The proposed complaint in intervention attached to DACE's motion included a counterclaim against Contestants for declaratory relief stating "that patients residing in [CSH-]Coalinga are lawfully entitled to vote in City of Coalinga elections if they intend the City of Coalinga to be their domicile."

Contestants opposed DACE's motion to intervene, contending DACE's request was not supported by any declarations or affidavits and, therefore, DACE had not shown that any challenged vote had been made by a member of DACE. Contestants also argued an election contest is a summary procedure and DACE, if allowed to intervene, should not be allowed to expand the litigation by seeking declaratory relief.

On February 28, the trial court issued a notice setting a hearing on the election contest for March 9. The court also stated: "The Court hereby continues the hearing on the motion for leave to intervene until after the hearing set out above. The [Court] shall set a date for that motion if appropriate."

On March 7, the trial court filed a minute order stating (1) the hearing on the motion for leave to intervene was continued, (2) a new hearing date would be set after the March 9, hearing on the election contest, and (3) the court recognized "that the proposed intervenors could be considered to be real parties in interest and for th[at] reason their attorney may be present at the March 9th hearing."

At the March 9, hearing, three attorneys appeared—one for Contestants, one for County, and one for DACE. The trial court established a briefing schedule and the hearing on the merits of the election contest was continued to April 27.

6.

*Election Contest Briefing*

On April 9, Contestants filed their opening brief in support of the election contest. The brief was approximately 12 pages long (excluding the caption page and tables). Contestants argued the patients at CSH-Coalinga were not domiciled in the City of Coalinga unless they resided in the city prior to their commitment to CSH-Coalinga. Based on this argument about domicile, Contestants asserted every vote from CSH-Coalinga's precinct should be excluded from the election results.

Simultaneous with the filing of Contestants' brief, DACE filed a 15-page opening brief (excluding the caption page and tables) in opposition to the election contest. The brief was supported by declarations from two patients of CSH-Coalinga. Each declaration described, among other things, how the patient registered to vote and why the patient regarded CSH-Coalinga as his domicile for voting purposes. Each patient asserted there was no other location where he could lawfully reside for voting purposes.

Another document filed on April 9, was labeled "STIPULATED FACTS FOR ELECTION CONTEST." The opening paragraph of the three-page stipulation stated the Contestants, in their personal and professional capacities as councilmembers, County, County's registrar of voters, "and proposed Intervenor [DACE], *constituting all the parties appearing in this action*, through undersigned counsel of record, hereby stipulate to the following facts." (Italics added.) The stipulation contained information about Measure C, the November 2017 election, CSH-Coalinga, and its patients—much of which is set forth earlier in this opinion.

On April 12, County filed a brief in reply to the briefs submitted by Contestants and DACE. County argued every affidavit of registration submitted by a patient was properly completed as to form, was duly executed, and the information (including the voter's residence at CSH-Coalinga) was certified under penalty of perjury. The brief relied primarily on provisions in the Elections Code but also cited Government Code section 26802, Evidence Code section 664, and one case—*Bridgeman v. McPherson*

7.

(2006) 141 Cal.App.4th 277, 287. The body of County's brief was slightly more than four pages long and its second to last paragraph stated that, for the reasons stated therein *and in DACE's brief*, County requested the trial court to deny the election contest and confirm the official election results.

A week later, DACE filed a reply brief in opposition to the election contest. The brief was 14 pages (excluding the caption page and tables). DACE's reply brief addressed many of the cases and other authorities relied upon by Contestants in their opening brief. The next day, Contestants filed their reply to County's brief and to DACE's opposition to the election contest.

On April 27, the trial court held a hearing on the merits of the election contest. Counsel for DACE was present. The trial court heard arguments and took the matter under submission.

*Trial Court's Decision*

On May 8, the court issued a 11-page order denying the election contest. The court found there was no defect in the voter registration process and concluded the statutes "support the position that one committed to a State Hospital can register to vote in the County of the commitment." The order discussed cases and other authorities that had been addressed only by Contestants and DACE. For example, the court rejected Contestants' interpretation of *In re Marriage of Thornton* (1982) 135 Cal.App.3d 500 and *Hillman v. Stults* (1968) 263 Cal.App.2d 848 and adopted DACE's characterization of the cases. The court also rejected Contestants' reliance on decisions from other jurisdictions, concluding they were not relevant "as they do not interpret California law."

*Motion for Attorney Fees*

In July, DACE filed a motion for attorney fees pursuant to section 1021.5 with a supporting declaration from its attorney. DACE asserted its attorney and a law clerk expended 31.5 and 100.2 hours, respectively. DACE requested hourly rates of $325 and $150 and a 1.75 multiplier, resulting in a total of $44,218.13. Contestants opposed the

8.

motion, arguing DACE did not meet the statutory criteria for an award of attorney fees and the fees claimed were excessive. Contestants addressed the successful party criterion by arguing DACE was not a "party" to the election contest and, therefore, was not a successful party. Near the end of July, the trial judge who decided the election contest had his nomination to the Court of Appeal confirmed by the Commission on Judicial Appointments. Another judge was assigned to the case for all purposes.

In August, the trial court held a hearing on the motion for attorney fees. A few weeks after the hearing, the court issued an order adopting its tentative ruling to deny DACE's motion for attorney fees. The ruling stated DACE was not a party and acknowledged that "intervenors or de facto intervenors have the ability to interpose in a lawsuit and become a party to it." The ruling discussed the concept of de facto interveners, cited *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588 (*Savaglio*) and *Investco*, *supra*, 22 Cal.App.5th 443, and stated:

> "While DACE is an organization that purports to represent the interests of those whose votes were at issue, it is not a person or party directly impacted by the contest. [¶] The court finds that DACE was not a de facto intervenor, and therefore was not vested with the same procedural rights and remedies as the original parties to the suit. [¶] However, the court did permit DACE to participate and present its arguments as a friend of the court, or amicus curiae. DACE has provide[d] the court with no authority for recovery of attorney fees under Code of Civil Procedure section 1021.5 by an amicus curiae."

The court determined "DACE was not a 'successful party' in this proceeding, and therefore is not eligible for an award of attorney fees under section 1021.5." The court's ruling did not address the other criteria in section 1021.5. In September, DACE filed a timely notice of appeal.

9.

# DISCUSSION

## I. GENERAL PRINCIPLES

### A. Overview of Section 1021.5

Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.) "[T]he private attorney general doctrine 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1289; see *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 (*Graham*) [adopting "catalyst" theory for awarding fees to a plaintiff who has not obtained any judicial relief but caused the defendant to change its behavior].)

Section 1021.5 provides in relevant part:

> "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Courts and commentators have divided this statutory text in various ways. To assist counsel in organizing their arguments, declarations and other evidence relevant to a statutory fee award and to aid superior courts' analyses of the evidence and arguments, we

have identified six separate elements. "A superior court may award attorney fees to (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate, and (6) in the interests of justice the fees should not be paid out of the recovery." (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 390, fn. omitted (*Robinson*); cf. *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026–1027 [three statutory factors]; 1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2020) § 3.37, p. 3-29 (*Pearl on Attorney Fees*) [successful party "must satisfy four criteria set out in the statute"].)

The burden of proving the existence of the first five statutory elements listed in *Robinson* is placed on the party requesting attorney fees under section 1021.5. (See *Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1044; Evid. Code, §§ 500 [burden of proof], 550 [burden of producing evidence].) When a litigant establishes those elements, the court's discretion to deny fees is quite limited. (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1344 (*Lyons*).) In that situation, attorney fees must be awarded unless special circumstances render such an award unjust. (*Ibid.*; *Robinson*, *supra*, 202 Cal.App.4th at p. 391; *Pearl on Attorney Fees*, *supra*, § 2.51, pp. 2-44 to 2-44.1.)

B.     Standard of Review

The abuse of discretion standard of review normally is applied to a trial court's ruling on a motion for attorney fees under section 1021.5. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213 (*Whitley*).) De novo review, however, " ' "is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."

11.

' " (*Ibid*.; *McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610, 623 ["Where the material facts are undisputed, and the question is how to apply statutory language to a given factual and procedural context, the reviewing court applies a de novo standard of review to the legal determinations made by the trial court"].)

## II.    SUCCESSFUL PARTY

Most of the appellate decisions addressing the "successful party" criterion in section 1021.5 focus on whether the litigant requesting attorney fees was successful. (See e.g., *Graham*, *supra*, 34 Cal.4th at p. 566 [success is determined by the impact of the action]; *City of Oakland v. Oakland Police and Fire Retirement System* (2018) 29 Cal.App.5th 688, 708 [partially successful plaintiffs may recover fees]; *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 493 (*POW*) [whether a party is "successful" for purposes of section 1021.5 requires an analysis of the circumstances surrounding the litigation and a pragmatic assessment of the gains achieved by a particular action].)  Here, the trial court denied DACE's motion because "DACE is not a party" and "DACE was not a de facto intervenor."  Therefore, this appeal presents the less common question of whether the litigant requesting attorney fees qualifies as a "party" for purposes of section 1021.5's "successful party" requirement.

### A.    Unincorporated Associations

DACE is an unincorporated association.  (See generally, 9 Witkin, Summary of Cal. Law (11th ed. 2017) Corporations, §§ 42-55, pp. 842–858 [unincorporated associations].)  Therefore, to establish the context for the arguments about whether DACE qualifies as a "successful party" (§ 1021.5) in the election contest, we provide an overview of the legal principles governing unincorporated associations and address how those principles apply to DACE.

### 1.    A Brief History

Long ago, "an unincorporated association was not considered to be a legal entity separate from its members." (Recommendation: Unincorporated Associations (Sept. 2003) 33 Cal. Law Revisions Com. Rep. (2003) 729, 733.)  They are not "recognized by the law as persons.  They are mere aggregates of individuals called for convenience, like partnerships, by a common name." (*Grand Grove of United Ancient Order of Druids of California v. Garibaldi Grove* (1900) 130 Cal. 116, 119.)

During the 20th century, the legal status of unincorporated associations evolved with the enactment of statutes and developments in the common law.  For instances, in *White v. Cox* (1971) 17 Cal.App.3d 824, the court stated:  "Since 1962 the trend of case law has flowed toward full recognition of the unincorporated association as a separate legal entity." (*Id*. at p. 828.)  In *Redondo Beach Police Officers Assn. v. City of Redondo Beach* (1977) 68 Cal.App.3d 595, (*Redondo Beach*), the court stated that, since the 1967 enactment of former section 388, there has been no difference between incorporated associations and unincorporated associations for purposes of determining standing to sue. (*Redondo Beach*, *supra*, at p. 599.)

In 2003, the California Law Revision Commission (Commission) recommended "improvements to existing California law governing unincorporated associations," including reorganizing provisions to improve accessibility, defining important terms, detailing the proposed law's relation to other law, and simplifying existing provisions relating to property ownership and transfer. (Recommendation: Unincorporated Associations (Sept. 2003) 33 Cal. Law Revisions Com. Rep., *supra*, at pp. 735–736.)  Based on this recommendation, the Legislature repealed many provisions in the Corporations Code (Stats. 2004, ch. 178, §§ 12–14, 17–24) and added a new title 3 to the Corporations Code (Stats. 2004, ch. 178, §§ 10–11).

In 2004, the Commission recommended additional definitions and "that basic governance rules be added to the law of unincorporated associations."

13.

(Recommendation: Unincorporated Association Governance (Sept. 2004) 34 Cal. Law Revisions Com. Rep. (2004) 231, 236, 241.)  In response, the Legislature revised and added definitions to title 3 of the Corporations Code and added a new chapter on the governance of unincorporated associations.  (Stats. 2005, ch. 116, §§ 1–6; see Corp. Code, §§ 18300–18420 [governance].)

"Unincorporated association" currently is defined as "an unincorporated group of two or more persons joined by mutual consent to a common lawful purpose, whether organized for profit or not."  (Corp. Code, § 18035, subd. (a).)  " 'Governing document' means a constitution, articles of association, bylaws, or other writing that governs the purpose or operation of an unincorporated association or the rights or obligations of its members."  (Corp. Code, § 18008.)  A "member" of an association is a person who has a right to participate (1) in the selection of persons authorized to manage the affairs of the association or (2) in the development of the policy of the association.  (Corp. Code, § 18015.)

To summarize, under California law, unincorporated associations possess many characteristics of other legal entities and may (1) sue or be sued, (2) own and transfer an interest in real or personal property, (3) take property under a will, (4) register a trademark, (5) seek an injunction against a public nuisance or unfair competition, or (6) engage in commerce.  (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 44, p. 845 [entity status].)

### 2.    *Capacity to Litigate*

In this appeal, we are primarily interested in the ability of an unincorporated association to participate in litigation, a subject addressed by the Code of Civil Procedure.  "A partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known."  (§ 369.5, subd. (a).)  Section 369.5 was enacted in 1992 and it "restates former Section

14.

388 without substantive change." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (2004 ed.) foll. § 369.5, p. 43.) As stated earlier, former section 388 was enacted in 1967. (*Tenants Assn. of Park Santa Anita v. Southers* (1990) 222 Cal.App.3d 1293, 1298 (*Tenants Assn.*); *Redondo Beach*, *supra*, 68 Cal.App.3d at p. 599.) Thus, for over 50 years, unincorporated associations have been authorized by statute to participate in litigation.

Consequently, the fact DACE is an unincorporated association does not disqualify it from intervening in the election contest. (See generally, *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 283 [two entities, the Flood Mitigation League of Ross Valley and the Friends of Corte Madera Creek, successfully intervened in an election contest, joining the flood control district in opposing the contest] (*Greene*).)[3]

### 3.    *Representative Capacity*

In the present election contest, DACE did not participate to vindicate a right or interest it held as a separate legal entity. DACE itself was not eligible to vote in the November 2017 election and, thus, it did not attempt to join the election contest to protect its right to vote. Instead, DACE appeared in a representative capacity, seeking to protect the rights of its members and the other patients at CSH-Coalinga. Accordingly, we examine the ability of unincorporated associations to appear in litigation to represent the interests of its membership.

In 1990, an appellate court stated: "It is not altogether clear under what circumstances an unincorporated association has standing to sue in a representative

---

[3]    Our Supreme Court's decision did not state whether these entities were incorporated or not. The omission of this fact implies it was not material—that is, whether they were incorporated or unincorporated did not affect their right to intervene and participate in the election contest. (See *Redondo Beach*, *supra*, 68 Cal.App.3d at p. 599.)

capacity." (*Tenants Assn.*, *supra*, 222 Cal.App.3d at p. 1299.)  The court then provided a lengthy discussion addressing an association's capacity to sue in (1) public interest suits, (2) prospective relief suits, and (3) money damages suits.  (*Id.* at pp. 1299–1305.)

In *Tenants Assn.*, an unincorporated association of present and past tenants of a mobile home park sued the park owners and manager alleging breach of statutory duties, unfair business practices, fraud, cancellation of written instruments, injunctions and abatement of a nuisance.  (*Tenants Assn.*, *supra*, 222 Cal.App.3d at p. 1295.)  The trial court sustained the defendants' demurrer on the ground the association lacked standing to pursue those claims.  (*Id*. at p. 1298.)  The Second District reversed as to some of the claims, concluding the association could sue in a representative capacity and seek prospective relief such as an injunction or declaration of rights.  (*Id*. at p. 1302.)  Because the relief sought on those claims was generally applicable to the tenants, the court stated "that considerations of necessity, convenience and justice provide justification for the use of the representative procedural device."  (*Id*. at p. 1304.)  In comparison, the court concluded the association did not have standing to sue for money damages relating to anxiety, emotional distress or personal injuries because the alleged injuries were inherently too personal to the individual to reasonably constitute a community of interest. (*Id*. at p. 1304.)

In reaching its conclusions, the court "recognized the right of an unincorporated association to sue to challenge governmental action."  (*Tenants Assn.*, *supra*, 222 Cal.App.3d at p. 1299.)  The court discussed *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, stating:

> "Back in 1973, one appellate court noted that: 'In recent years there has been a marked accommodation of formerly strict procedural requirements of standing to sue [citation] and even of capacity to sue [citation] where matters relating to the "social and economic realities of the present-day organization of society" [citation] are concerned.' [Citation]. [¶] In *Residents of Beverly Glen*, the court held that a homeowners association had standing to sue to challenge governmental action because its complaint

16.

alleged that its members lived in the affected area of the challenged project and would suffer injury if the project was allowed to proceed. [Citation.] The court looked to the *public nature* of the question involved, noting that the right to sue is greatly relaxed where the question is of public interest." (*Tenants Assn.*, *supra*, 222 Cal.App.3d at pp. 1299–1300.)

Adapting the foregoing principles to election contests, we conclude an unincorporated association has standing to appear in an election contest *as a representative* of its members if (1) its members live in the area affected by the outcome of the election, (2) its members would suffer injury from an adverse outcome in the election contest, and (3) the questions involved were of a public nature. (See *Greene*, *supra*, 49 Cal.4th at p. 283 [associations intervened in election contest].)

### 4. *DACE's Capacity to Represent its Members in the Election Contest*

We next consider whether DACE has met the three enumerated conditions. First, it is undisputed that the patients residing at CSH-Coalinga are in an area affected by the referendum vote on Measure C. The hospital constitutes a separate precinct within the City of Coalinga. Therefore, we conclude the first condition was satisfied.

Second, the members of DACE would have been harmed in at least two ways if the election contest was successful. A successful election contest would have nullified the votes they cast in the November 2017 election and, as a result, adversely effected their right to vote. Also, the passage of Measure C would have affected the economic interests of patients in CSH-Coalinga by increasing the amount of sales tax they paid on goods purchased. Based on these two impacts, we conclude the second condition was satisfied.

Third, the election contest involved questions of a public nature because Measure C, a sales tax measure, has public aspects both in terms of who pays the cost of local government and what services are provided the City of Coalinga. Furthermore, the specific challenge raised in this election contest addressed the right of patients at CSH-Coalinga to vote in the election. A Californian's right to vote is a fundamental

17.

constitutional right. (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 321.) The right to vote is also a fundamental right for purposes of the equal protection clause in the Fourteenth Amendment. (*Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 678.) Using a bit of hyperbole for emphasis, Justice Mosk stated for a unanimous Supreme Court that "the right to vote may be the most fundamental of all .…" (*Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 914; see *Pearl on Attorney Fees*, *supra*, § 3.45, pp. 3-37 to 3-40 [cases holding the vindication of constitutional rights qualifies as an action enforcing important rights affecting the public interest].) Therefore, we conclude the specific challenge of illegal votes raised in this election contest involves questions of a public nature.

### 5. Trial Court's Approach to DACE's Representative Capacity

In *Robinson*, *supra*, 202 Cal.App.4th 382, this court described a two-step approach useful in determining whether the trial court abused its discretion. (*Id*. at p. 391.) "First, the appellate court considers whether the superior court applied the proper legal standards in reaching its determination." (*Ibid*.) If the wrong legal standards were applied, the trial court abused its discretion. (*Ibid*.) When carrying out this step, "an appellate court must pay particular attention to the superior court's stated reasons" for awarding or denying fees. (*Ibid*.) Based on this approach, we quote the trial court's analysis of DACE's ability to represent its members interests in the election contest.

> "The court did not grant DACE's motion to intervene because it was not consistent, particularly as to the form in which DACE sought to intervene, with a summary proceeding such as an election contest. The de facto interveners in *Investco* were determined to be clearly interested parties and de facto intervenors because they were specifically targeted in the action. (*Investco*, *supra*, [22 Cal.App.5th] at p. 459.) While DACE is an organization that purports to represent the interests of those whose votes were at issue, it is not a person or party directly impacted by the contest. [¶] The court finds that DACE was not a de facto intervenor, and therefore was not vested with the same procedural rights and remedies as the original parties to the suit."

18.

This analysis is devoid of any reference to an unincorporated association's ability to appear in litigation in a representative capacity and does not acknowledge cases in which an association of voters or taxpayers has appeared in an election contest. (E.g., *Greene*, *supra*, 49 Cal.4th 277; *Simac Design, Inc. v. Alciati* (1979) 92 Cal.App.3d 146, 153 [unincorporated association of residents of and registered voters in city, whose purpose was to draft and organize voter support for initiative measure, was an aggrieved party with standing to appeal].) Consequently, the trial court's analysis of DACE's right to intervene in the election contest was contrary to existing legal principles governing an unincorporated association's ability to appear in litigation in a representative capacity. As a result, that portion of the trial court's analysis was not an informed exercise of its discretion. (See *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90 [" 'a discretionary order based on an application of improper criteria or incorrect legal assumption is not an exercise of informed discretion and is subject to reversal' "].)

Furthermore, based on an unincorporated association's ability to appear in litigation in a representative capacity on behalf of its members, DACE qualified for permissive intervention under section 387, subdivision (d)(2).[4] In *Highland Development Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 169, disapproved on another ground in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11, the court concluded an association of homeowners who resided in a historic district directly abutting the development project that was the subject of litigation between the developer and the city were directly within the ambit of section 387's provisions for permissive intervention. (*Highland*, *supra*, at p. 179.) Thus, the association was allowed to represent landowners whose home would be affected by the development; the court did

---

[4] The subdivision states: "The court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." (§ 387, subd. (d)(2).)

19.

not require the association itself to own affected real estate. Accordingly, if the trial court had granted DACE's motion to intervene, such an order would not have constituted an abuse of discretion under section 387's permissive intervention provision. Stated from another perspective, the trial judge who acknowledged DACE could be considered a real party in interest did not err in their description.

To summarize, we conclude (1) the trial court's analysis of DACE's right to intervene in the election contest in the order denying the motion for attorney fees did not accurately reflect California law governing an unincorporated association and (2) DACE qualified for permissive intervention. We next turn to the primary issue in this appeal—that is, whether DACE qualified as a party for purposes of section 1021.5's "successful party" requirement.

## B. Litigants Who Qualify as a "Party"

### 1. Plaintiffs, Defendants and Real Parties in Interest

To effectuate the policy underlying section 1021.5, courts take "a broad, pragmatic view of what constitutes a 'successful party.' " (*Graham*, *supra*, 34 Cal.4th at p. 565.) Thus, the successful party criterion is not limited to plaintiffs and defendants. A real party in interest "who independently meets the requirements of § 1021.5 (*i.e.*, who has acted as a private attorney general) may be eligible for an award of attorney fees." (*Pearl on Attorney Fees*, *supra*, § 3.19, p. 3-19 [real parties in interest].)

For example, in *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614 (*San Marcos*), the Wal-Mart entity filed a petition for writ of mandate against the city, the city's clerk and the county's registrar of voters to keep a referendum measure off the ballot. (*Id*. at p. 621.) The measure challenged the city council's decision to allow Wal-Mart to build a second store in the city. (*Id*. at p. 617.) The real parties in interest were two individuals who resided in the city and had submitted the referendum petition to the city's clerk. (*Id*. at p. 618.) The real parties in

interest opposed Wal-Mart's writ petition, while the city and the city's clerk filed a response that sought guidance on the proper verification of petition signatures. (*Ibid*.) The trial court denied Wal-Mart's petition, the measure stayed on the ballot, and approximately 61 percent of the voters approved the measure. (*Id*. at p. 619.) After the election, the real parties in interest requested attorney fees. The trial court denied the request. (*Ibid*.)

The Fourth District reversed the order denying the request for attorney fees and "remanded to the trial court for a new hearing on the amount of an award." (*San Marcos*, *supra*, 132 Cal.App.4th at p. 626.) The appellate court rejected Wal-Mart's argument that the real parties in interest were not successful parties, citing an earlier case that "held real parties in interest were entitled to attorney fees under section 1021.5." (*Id*. at p. 622.) The court also determined the real parties in interest met the other statutory requirements and, therefore, were entitled to fees. (*Id*. at pp. 622–624.)

In summary, *San Marcos* is a case involving litigation over a city election where the election results were upheld and the real parties in interest were determined to be "successful parties" and otherwise eligible for attorney fees under section 1021.5.

### 2. Amicus Curiae

In contrast to real parties in interest, "[a]micus curiae generally are not entitled to fees under fee-shifting statutes, including [section] 1021.5, because they are not 'parties.' " (*Pearl on Attorney Fees*, *supra*, § 3.20, p. 3-21; see *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1177 ["amici curiae traditionally have not been considered parties *liable for attorney fees*"], italics added.)

### 3. Interveners

Under California law, interveners become a party to the action with the same procedural rights, remedies and responsibilities of the original parties. (*Carlsbad Police Officers Association v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 148–149

(*Carlsbad*).) "[T]hose procedural rights and remedies include the right to seek attorney fees under section 1021.5 on equal terms with the original parties." (*Id*. at p. 149.)

In *Crawford v. Board of Education* (1988) 200 Cal.App.3d 1397, the court stated that litigants who intervene at some point during the course of public interest litigation and contribute in a significant way to the vindication of an important constitutional or statutory right are eligible for an award under section 1021.5. (*Crawford*, *supra*, at p. 1407.) The court stated: "Although the legislative history of section 1021.5 is silent on the appropriate standard for awarding attorney's fees to interveners, federal decisional authority has consistently held that such parties must make a clear showing of some unique contribution to the litigation." (*Ibid*.) In *Crawford*, the appellate court concluded "the record supports the trial court's finding that interveners failed to affirmatively demonstrate a causal relationship between their participation in the remedial phase of this litigation and the practical result which obtained." (*Id*. at p. 1408.) As a result, the court upheld the denial of attorney fees to the interveners. (*Id*. at p. 1410.)

### 4. De Facto Interveners

In *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43 (*City of Santa Monica*), a nonprofit taxpayer and consumer rights organization sponsored initiative measures that sought to prevent city officials from receiving certain advantages from persons or entities who derived benefit from discretionary decisions made by city officials while in office. (*Id*. at p. 50.) Voters approved the initiatives and lawsuits were brought relating to the enforcement of the initiatives. (*Ibid*.) The sponsoring organization was allowed to intervene in the lawsuits. (*Id*. at pp. 53–54.) Part of the appellate opinion addressed the sponsoring organization's motion to recover attorney fees under section 1021.5. (*City of Santa Monica, supra,* at pp. 82–90.) The court's analysis of the organization's eligibility for an attorney fees award included the determination that the trial court erred in requiring the organization to show the requested relief would not

have been obtained *but for* its participation in the litigation. (*Id*. at p. 89.) The court stated: "A party who satisfies the criteria for intervention and who contributes to the success of public interest litigation should be entitled to an award of attorneys' fees on the same terms as any other party." (*Id*. at p. 87.) This reference to a litigant that satisfied the criteria for intervention, as opposed to a litigant who actually had intervened, suggested that de facto interveners might be eligible for attorney fees under section 1021.5. This suggestion about de facto interveners was dicta because the organization seeking attorney fees in *City of Santa Monica* had successfully intervened.

The term "de facto intervener" was used in *Savaglio*, *supra*, 149 Cal.App.4th 588. In that case, a retailer was sued for violating meal and rest break laws. During the litigation, the retailer filed records conditionally under seal without complying with the rules of court. A newspaper moved to unseal the records and the retailer filed a belated motion to seal, which the trial court granted in part. The newspaper requested attorney fees under section 1021.5, which the trial court denied. Both orders were appealed. The appellate court reversed the order granting the motion to seal and affirmed the order denying the motion for attorney fees. (*Savaglio*, *supra*, at p. 604.) The appellate court stated the newspaper "did not file a complaint in intervention under Code of Civil Procedure section 387, and the [trial] court declined to find it a de facto intervener." (*Savaglio*, *supra*, at p. 602.) The court also stated that because the motion to seal "was entirely unrelated to the objective of the lawsuit," the newspaper's success was an "ancillary part of the litigation." (*Id*. at p. 603.) *Savaglio* is relevant to the present appeal because it implied, but did not decide, that a de facto intervener was eligible for attorney fees under section 1021.5.

The most recent decision to discuss a de facto intervener's eligibility for attorney fees under section 1021.5 is *Investco*, *supra*, 22 Cal.App.5th 443. There, two individual investors who were victims of securities fraud specially appeared in an already-settled securities fraud action brought by a state agency against a real estate investment company

23.

and its promoter. (*Id*. at p. 448.) The two investors successfully opposed a motion that would have stayed all actions by defrauded investors against the defendants and raised several issues about the fairness of the settlement, resulting in substantive changes to the judgment entered. (*Ibid*.) The trial court found the investors who specially appeared were successful parties, determined they met the other statutory criteria and awarded them $149,500 in attorney fees. (*Id*. at pp. 448, 454–455.) The appellate court upheld the award, stating the record amply supported the trial court's conclusion that the individuals, "as de facto interveners, provided a 'unique contribution to the litigation.' " (*Id*. at p. 461.)

*Investco* appears to be the first case in which de facto interveners were awarded attorney fees under section 1021.5 and the award was upheld on appeal. Thus, it establishes the precedent that a de facto intervener may qualify as a "successful party" for purposes of section 1021.5 attorney fees. (See generally, 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 509, pp. 572–573 [*ratio decidendi* and *dicta*].) As a result, the principle that a de facto intervener is a "party" for purposes of section 1021.5 is no longer merely a suggestion contained in dicta.

## C.    DACE as a De Facto Intervener

Here, the trial court's written order denying attorney fees found "DACE was not a de facto intervenor" and characterized DACE's participation "as a friend of the court, or amicus curiae." To complete a proper review of this determination, we must classify the trial court's determination and identify the standard of review applied to that type of determination.

### 1.    *Determination Made and Applicable Standard of Review*

The abuse of discretion standard of review applies to a superior court's decision on a motion for attorney fees under section 1021.5. (*Whitley*, *supra*, 50 Cal.4th at p. 1213.) "The abuse of discretion standard is not a unified standard; the deference it calls

24.

for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) When the trial court's resolution of a question of law is challenged, its legal conclusion is reviewed de novo. (*Id.* at pp. 711–712.) When the trial court's findings of fact are challenged, the findings are reviewed for substantial evidence. (*Id.* at p. 711.) Under some circumstances, the application of a criterion in section 1021.5 to the facts may present "a mixed question of law and fact and, if factual questions predominate, may warrant a deferential standard of review." (*Connerly v. State Personnel Bd.*, *supra*, 37 Cal.4th at p. 1175.) In contrast, when the controversy over whether a criterion is met presents a mixed question and the material facts are largely undisputed, the mixed question is treated as a question of law and reviewed de novo. (*Id.* at pp. 1175–1176.)

Here, DACE's participation in the election contest is largely undisputed because that participation is reflected in the record. Consequently, we conclude whether DACE is a de facto intervener and, thus, a "party" for purposes of section 1021.5 is a mixed question of law and fact that should be treated as a question of law and subject to de novo review. In other words, we reject Contestants' argument that we "should simply determine whether the result was within the range of the Trial Court's discretion" and Contestants' claim that the judge assigned to the case after the election contest was decided was in the best position to determine whether DACE was a party. Here, the trial judge who decided the motion for attorney fees was not the judge who decided the election contest. As a result, that judge's application of section 1021.5, like this court's, is based on a review of the record.

### 2. *De Facto Versus De Jure Interveners*

The California cases discussing de facto interveners in the context of an award of attorney fees under section 1021.5 do not provide an extensive definition of the term.

Consequently, to establish the foundation for our analysis of whether DACE qualifies as a de facto intervener, we consider the meaning of the modifiers "de facto" and "de jure."

One legal dictionary states "de facto" means: "Actual, existing in fact; having effect even though not formally or legally recognized." (Black's Law Dict. (8th ed. 2004) p. 448.) It also states "de jure" is a Latin phrase for " 'as a matter of law' " that means: "Existing by right or according to law." (*Id*. at p. 458.)[5] Based on these definitions, we conclude a de facto intervener has two primary characteristics. First, the individual or entity has not been formally recognized by the court as an intervener pursuant to the procedure set forth in Code of Civil Procedure section 387. Second, the individual or entity actually participates in the litigation in essentially the same way as a formally recognized party.

Examining the litigant's actual participation is consistent with our Supreme Court's approach to section 1021.5. It has acknowledged that, to effectuate the policy underlying section 1021.5, courts take "a broad, pragmatic view of what constitutes a 'successful party.' " (*Graham*, *supra*, 34 Cal.4th at p. 565.) A pragmatic view of the litigation considers what the litigant seeking attorney fees actually did and what was actually achieved. Thus, a pragmatic approach to whether an entity qualifies as a de facto intervener and, thus, a party for purposes of section 1021.5 examines what that entity actually did while participating in the litigation.

Our Supreme Court also stated "the procedural device by which a plaintiff seeks to enforce an important right is not determinative of his or her entitlement to attorney fees under section 1021.5" (*Graham*, *supra*, 34 Cal.4th at p. 566.) This principle demonstrates that when determining eligibility for attorney fees under section 1021.5, procedural formalities are not as important as the entity's actual participation and the

---

[5] De jure intervention in California is governed by section 387, which provides for two types—compulsory and permissive. (*Carlsbad*, *supra*, 49 Cal.App.5th at p. 148; see § 387, subds. (d)(1)(B) [compulsory], (d)(2) [permissive].)

actual results achieved. Consequently, our Supreme Court's view of procedural devices is consistent with our conclusion that determining whether a litigant is a de facto intervener involves an examination of what the litigant actually did in the lawsuit and assigns little significance to the procedural formalities employed.

### 3. *Distinguishing Interveners from Amici Curiae*

Based on the definitions of "de facto" and "de jure" and the distinction prior cases have drawn between interveners and amici curiae, we next consider how the participation of an intervener differs from the participation of an amicus curiae. "The granting of leave to appear as amici curiae is not the full equivalent of intervention, for amici curiae are confined to legal argument, cannot plead or offer evidence, and cannot appeal from an adverse decision." (4 Witkin, Cal. Procedure, *supra*, Pleading, § 236, p. 317.) Thus, in terms of participating in the trial court proceedings, both amici curiae and interveners present legal argument, but only interveners may submit a pleading or offer evidence.

### 4. *DACE's Participation in the Election Contest*

The trial court deferred ruling on DACE's motion to intervene and allowed DACE to participate in the election contest as though Dace's motion to intervene had been granted and DACE's request of declaratory relief had been held in abeyance until the election contest was resolved. DACE's participation in the election contest included filing an opening brief on the same day Contestants filed their opening brief. Also, like Contestants, DACE filed a reply brief. As a result, DACE's participation in the briefing of the case was akin to a plaintiff in intervention, not an amicus curiae. Furthermore, unlike an amicus curiae, DACE participated in the submission of evidence to the trial court. Its counsel signed the "STIPULATED FACTS FOR ELECTION CONTEST." DACE also presented two declarations of patients at CSH-Coalinga. As to pleading, DACE's proposed complaint in intervention never became operative and had no impact on the outcome of the litigation.

DACE's participation in the election compels a determination that it qualifies as a de facto intervener and not an amicus curiae. The fact DACE participated in the submission of the stipulation, presented evidence in the form of declaration, and filed two briefs while the named defendants filed one brief readily distinguishes DACE's participation from that of an amicus curiae. Although DACE's motion for intervention was not decided and its proposed complaint in intervention never became operative, those facts do not prevent DACE from being a de facto intervener. The concept of a de facto intervener is necessarily limited to a person or entity that did not formally intervene and, consequently, would not have an operative pleading in the lawsuit.

To summarize, based on the record presented, we find as a matter of law that DACE was a de facto intervener. As a result, DACE was a "party" to the lawsuit for purposes of section 1021.5.

D. DACE Was Successful

1. Results Achieved

DACE sought to participate in the election contest to resist Contestants' attempt to invalidate the votes cast by its members and other patients at CSH-Coalinga and change the outcome of Measure C. The last sentence in DACE's opening trial court brief clearly identified DACE's objective, stating "this election contest must be denied." This objective was achieved. The last two sentences of trial court's May 8 order stated: "There is no defect in the voter registration process, and the statutes relating to the affidavit support the position that one committed to a State Hospital can register to vote in the County of the commitment. [¶] Accordingly, the election contest is denied." Thus, the trial court's final decision adopted the outcome sought by DACE. The votes cast by patients at CSH-Coalinga were valid and the defeat of Measure C was upheld.

When a court considers whether a party was successful in the litigation, the critical inquiry is the impact of the action, not the way in which the action was resolved.

28.

(*Graham*, *supra*, 34 Cal.4th at p. 566.)  When evaluating a lawsuit's impact, courts must pragmatically assess the gains achieved by the party seeking attorney fees.  (*Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 334.)  Treating the prevention of harm to a defendant as the equivalent of the gains achieved by a plaintiff, we conclude that when the party seeking fees is a defendant or is a de facto intervener aligned with the defense, the evaluation of success is based on a pragmatic assessment of the harm prevented to the defendant or de facto intervener's interests.  Here, a pragmatic assessment of the election contest leads to the conclusion that the court's denial of the election contest vindicated the right to vote of patients at CSH-Coalinga and protected their economic interest in paying lower sales tax.  Consequently, the results achieved in the election contest were a success for DACE as an association acting in a representative capacity.

### 2. *Unique Contribution Requirement*

Our inquiry into whether DACE was "successful" for purposes of section 1021.5 does not end with determining the defeat of the election contest protected the voting rights and economic interests of DACE's members.  California case law suggests that a de facto intervener also must show that it "provided a 'unique contribution to the litigation.'  [Citation.]" (*Investco*, *supra*, 22 Cal.App.5th at p. 461.)  We interpret this unique contribution requirement to mean the litigant claiming fees must offer evidence and present legal arguments that were not submitted by the other litigants.  In this case, the briefs and declarations DACE filed in the trial court are part of the appellate record and their contents are not disputed.  As explained below, our examination of DACE's briefs and declarations leads us to find as a matter of law that DACE made a unique contribution to the defense of the election contest.

Part II.C.4. of this opinion provides a general description of DACE's participation in the election contest.  Here, we examine that participation in more detail.

### 3. Legal Arguments Contributed

DACE's opening brief in the election contest was filed before County's only brief. As a result, DACE has the first opportunity to develop arguments for denying the contest. A comparison of the two briefs filed by DACE with County's trial court brief shows DACE advanced arguments not explicitly set forth by County. Indeed, County's trial court brief, rather than repeating DACE's earlier arguments, simply incorporated them by stating: "Finally, for the reasons stated herein and in [DACE's] BRIEF IN OPPOSITION TO ELECTION CONTEST, the Court is requested to deny Contestants' Election Contest" and confirm the election results previously certified by County.

The arguments presented by DACE qualify as a "contribution" to the litigation and outcome because they are reflected in the trial court's decision. DACE's opening brief on appeal provides six comparisons between its trial court briefs and the trial court's order denying the election contest. These comparisons support DACE's argument that the court adopted several arguments advanced solely by DACE. These arguments involved (1) the Restatement (Second) of Conflict of Laws, (2) *In re Marriage of Thompson, supra,* 135 Cal.App.3d 500, (3) *Hillman v. Stults, supra,* 263 Cal.App.2d 848, (4) an opinion of the California Attorney General, (5) Welfare and Institutions Code section 6608.5 and Penal Code section 3003, and (6) statutes and cases from other jurisdictions.

In addition, both of DACE's trial court briefs discussed *People v. Holden* (1865) 28 Cal. 123; *Arapajolu v. McMenamin* (1952) 113 Cal.App.2d 824; and *Jolicoeur v. Mihaly* (1971) 5 Cal.3d 565. County's brief did not mention these cases. Similarly, Contestants' trial court opening brief did not mention these cases. However, Contestants' trial court reply brief attempted to distinguish *Arapajolu* and *Jolicoeur*. The trial court's decision stated: "In its reply brief DACE points to additional authorities that support the legality of the votes in question." In the discussion that followed, the court referred *Holden*, *Arapajolu* and *Jolicoeur*.

30.

Consequently, the briefing contained in the appellate record shows DACE made a unique contribution to the legal arguments presented to the trial court. Furthermore, the trial court's decision demonstrates it considered DACE's arguments and determined they were convincing.

### 4. Evidence Contributed

DACE supported its opening trial court brief with two declarations from patients at CSH-Coalinga. DACE was the only litigant to present declarations from patients. The declarations described the patients' circumstances and reasons for listing CSH-Coalinga as their residence when registering to vote. DACE used this evidence to argue, among other things, that most CSH-Coalinga patients reside solely at the facility and "lack any alternative residence for voting or other purposes" and that some patients, including the declarants, "expect to spend the rest of their lives in CSH-C[oalinga]." The evidence in the patient declarations was not duplicated in the declarations filed by Contestants or County. Therefore, the record establishes that DACE made a unique contribution to the evidence presented in the election contest.

To summarize, based on DACE's status as a de facto intervener and its unique contribution to the evidence and argument presented in the trial court, we find as a matter of law that DACE was "a successful party" in the election contest for purposes of section 1021.5. (Cf. *POW*, *supra*, 130 Cal.App.4th at p. 497 [trial court's determination that environmental organizations were not successful parties for purposes of § 1021.5 reversed; this court determined organizations satisfied *all* of the statute's criteria and remanded to trial court to determine the amount of fees awarded].)[6] In other words,

---

**6** In *Robinson*, this court remarked that the application of the statutory criteria to the facts of a case often present reviewing courts with legal questions (i.e., questions that can be decided as a matter of law), which explains "the number of appellate decisions in which a superior court's denial of attorney fees under section 1021.5 has been reversed. [Citations.]" (*Robinson*, *supra*, 202 Cal.App.4th at p. 391.)

31.

DACE has satisfied what we have characterized as the first element of section 1021.5. (See *Robinson*, *supra*, 202 Cal.App.4th at p. 390 [six separate statutory elements].)

III.    OTHER ISSUES[*]

A.    Standing to Appeal

Contestants argue DACE lacks standing to appeal because it was simply an amicus curiae and not a party to the underlying election contest. Earlier, we rejected Contestants' argument that DACE is properly characterized as an amicus curiae and concluded DACE is a "party" for purposes of section 1021.5. (Pt. II.C., *ante*.) We further conclude that DACE is a "party" for purposes of standing on appeal under section 902, which states: "Any party aggrieved may appeal in [civil] cases." For internal consistency within the Code of Civil Procedure, we interpret the word "party" in section 902 to include de facto interveners that qualify as a "party" under section 1021.5. Furthermore, there is no genuine dispute that the denial of DACE's motion for attorney fees rendered it "aggrieved" for purposes of section 902. Consequently, we reject Contestants' argument that DACE lacks standing to appeal.

B.    Necessity of Private Enforcement

Section 1021.5 requires a successful party to establish "the necessity … of private enforcement" to be entitled to recover attorney fees. (See *Pearl on Attorney Fees*, *supra*, § 3.61, pp. 3-57 to 3-60 [determining whether private, as opposed to public, enforcement is necessary].) "[T]he 'necessity … of private enforcement' has long been understood to mean simply that public enforcement is not available, or not sufficiently available." (*Whitley*, *supra*, 50 Cal.4th at p. 1217.) Here, County opposed the election contest and, therefore, under our Supreme Court's description of the necessity requirement, the issue in this appeal is narrowed to whether public enforcement was "not sufficiently available." (*Ibid*.) The phrase "not sufficiently available" recognizes that in certain situations,

---

[*]    See footnote, *ante*, page 1.

attorney fees may be awarded to private parties who litigate on the same side as a public entity. (See *Pearl on Attorney Fees*, *supra*, § 3.63, pp. 3-60.1 to 3-61.)

Contestants argued DACE failed to demonstrate private enforcement was necessary and, therefore any error in the application of section 1021.5's "successful party" requirement is harmless. Contestants assert County and its registrar of voter "were required to defend the action and actively did so" and, as a result, DACE's involvement was not necessary to defeat the election contest.

First, it is possible to interpret Contestants' argument as implying that DACE must show that "but for" its participation in the election contest the outcome would have been less favorable. To the extent Contestants imply a "but for" test applies to the determination of the necessity for private enforcement, we reject that test. In *City of Santa Monica*, *supra*, 126 Cal.App.4th 43, the appellate court determined the trial court erred in requiring the intervening organization to show the requested relief would not have been obtained *but for* its participation in the litigation. (*Id*. at p. 89.) Similarly, we conclude the necessity requirement does not require a de facto intervener to show that but for its participation in the lawsuit a less favorable judgment or order would have been entered.

Second, we conclude the test for determining the necessity of private enforcement where a public entity has appeared in the litigation is set forth in *Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633 (*Committee to Defend*). In that case, the First District determined the district attorney's participation in the litigation did not bar the plaintiffs from recovering attorney fees under section 1021.5. The court reversed the denial of the attorney fees motion and remanded the issue of necessity for further consideration. (*Id*. at p. 646.) The court stated the trial court should address the following factors in determining whether the services of the private party were necessary: "(1) Did the private party advance significant factual or legal theories adopted by the court, thereby providing a material non de minimis contribution

33.

to its judgment, which were nonduplicative of those advanced by the governmental entity? (2) Did the private party produce substantial evidence significantly contributing to the court's judgment which was not produced by the governmental entity, and which was neither duplicative of nor merely cumulative to the evidence produced by the governmental entity?" (*Id*. at pp. 642–643.) Here, Contestants acknowledge *Committee to Defend* and its two-factor test. Contestants argue the test requires a private party to "make a **significant showing** that its participation was material to the result."

Previously, we concluded DACE made a unique (i.e., nonduplicative) contribution to the legal arguments and evidence presented to the trial court. (See pt. II.D.3. and II.D.4., *ante*.) In addition, we concluded the contents of the trial court's written decision demonstrated the court considered DACE's arguments and determined they were convincing. Here, we consider whether DACE's contribution satisfies the significance and materiality requirements of the *Committee to Defend* test. We conclude those requirements are satisfied.

The section of the trial court's decision labeled "Discussion" covered slightly more than six pages. Over 60 percent of that discussion addressed arguments and authority addressed by DACE. Our opinion need not go through that discussion sentence by sentence and correlate the subjects addressed to the contents of DACE's brief and the briefs of the other parties. Our review of that discussion convinces us that it was not background or superfluous; rather, it was a significant and material part of the trial court reasoning. Consequently, we conclude DACE's contribution qualifies as both significant and material. DACE did not simply ride County's coattails. (See *Pearl on Attorney Fees*, *supra*, § 2.28, p. 2-23 ["intervenors should not be able to recover fees for simply riding the coattails of the principal party or duplicating its efforts"].) Assessed from a realistic and practical point of view, County and DACE divided the work of opposing the election between themselves. In such a case, "it makes little sense to deny fees to counsel

34.

for [de facto] intervenors who perform work that counsel for the original plaintiff (or defendant) would otherwise have had to perform." (*Ibid*.)

Consequently, like the First District in *Lyons v. Chinese Hospital Assn.*, *supra,* 136 Cal.App.4th 1331, we conclude the factors in the *Committee to Defend* test are satisfied by the record presented on appeal. (*Lyons, supra,* at p. 1349.) As a result of this showing, we reject Contestants' argument that the denial of the motion for attorney fees can be upheld because private enforcement was not necessary.[7]

C.      Attorney Fees on Appeal

DACE's opening brief "further requests a determination that it is 'entitled to an award of attorney fees on appeal under section 1021.5.' (*Lyons*[, *supra*,] 136 Cal.App.4th [at p.] 1356.)" In *Lyons*, the appellate court concluded the trial court abused its discretion in denying attorney fees under section 1021.5, expressed no opinion as to the amount of a reasonable fee, and concluded "that, as at the trial level, [appellant] is entitled to an award of attorney fees on appeal under section 1021.5." (*Lyons*, *supra*, 136 Cal.App.4th at p. 1356.) Thus, the only issues remanded to the trial court were the amount of the fees for the trial court proceedings and the amount of fees for the appeal. (*Id*. at p. 1357.)

In *Serrano v Unruh* (1982) 32 Cal.3d 621, the Supreme Court stated that attorney fees, if recoverable at all pursuant to a statute, are available for services at trial *and on*

---

**7**      Although DACE was "a successful party" and "the necessity … of private enforcement" makes an award of attorney fees appropriate, DACE still must satisfy the remaining statutory elements to be entitled to attorney fees under section 1021.5. The remaining elements address whether the election contest "resulted in the enforcement of an important right affecting the public interest"; whether "a significant benefit has been conferred on the general public or a large class of persons"; whether "the financial burden of private enforcement is such as to make a fee award appropriate"; and whether "special circumstances render such an award unjust." (*Robinson, supra,* 202 Cal.App.4th at p. 390, 391.) These questions were not addressed in the appellate briefing. Consequently, they must be resolved in the first instance by the trial court on remand.

*appeal*. (*Id*. at p. 637.) "This rule governs whether or not the sole issue on appeal has been fee entitlement. [Citations.] Courts routinely have awarded fees on appeals vindicating only the right to an award for trial services. At least one such award was made under section 1021.5. [Citations.]" (*Id*. at pp. 637–638.)

We conclude *Lyons* is distinguishable from the present appeal because we have not determined DACE is entitled to an award of attorney fees in the underlying election contest. Instead, on remand, the trial court must determine whether DACE was "successful" and, if so, whether DACE met the other criteria of section 1021.5. If DACE prevails on its motions for fees relating to the election contest, it will be entitled to reasonable attorney fees incurred in this appeal. (See generally, California Rules of Court, rule 3.1702(c) [attorney fees on appeal].)

Regardless of the outcome of the motion for attorney fees incurred *in the election contest*, DACE might be able to recover the fees incurred in this appeal on a separate ground. California case law recognizes that when a litigant obtains a published opinion, the published opinion may provide a basis for awarding attorney fees under section 1021.5. (See generally, *Gonzales v. Santa Clara County Dept. of Social Services* (2017) 9 Cal.App.5th 162, 175 [securing published appellate decision]; *Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71, 78 [published opinion provided basis for attorney fees; denial of fees reversed and matter remanded for determination of amount]; *POW, supra,* 130 Cal.App.4th at pp. 495–496 [published decision supported finding of significant public benefit in the outcome of the litigation]; *Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725 [despite published opinion on constitutional rights, plaintiff not successful under section 1021.5 where he failed to achieve his litigation goal].) In other words, the appeal, standing alone, may satisfy the requirements of section 1021.5 and, as a result, DACE might be able to obtain an award for the fees incurred in the appeal. Whether DACE's success on appeal satisfies those

requirements and, if so, the amount of an award of reasonable attorney fees incurred in the appeal should be addressed on remand.

## DISPOSITION

The order denying the motion for attorney fees is reversed. The trial court is directed to vacate the order and conduct further proceedings on remand that are not inconsistent with this opinion.

Appellant shall recover its costs on appeal.


FRANSON, J.

WE CONCUR:


HILL, P.J.


DETJEN, J.